## CLAPP *v.* ASTOR.

In general cases of periodical payments becoming due at intervals and not accruing *de die in diem* there can be no apportionment. Annuities, therefore, and dividends from money in the funds are not apportionable. An exception appears in the case of annuities for maintenance of infants and of married women living separate from their husbands. And it does not apply to interest due on bond and mortgage, which may be apportioned, notwithstanding it is expressly made payable at stated periods.

Where it is agreed that a party shall receive all dividends and profit on stock so long as he remains in a certain employment and he quits before any dividend is made, he cannot have any apportionment of any general dividend afterwards made. Profit does not become dividend until so declared by the directors.

---

The bill in this cause, so far as it is now to be considered, went for an account of the profits or dividends on the shares

of capital stock of the American Fur Company. It alleged that in the Month of May one thousand eight hundred and twenty-three a verbal agreement was made between the complainant, Benjamin Clapp, and the defendant, John Jacob Astor, by which the complainant was to enter into the service and to take charge of the business of the defendant— who was the president of the American Fur Company and then about to leave the city of New-York for Europe—at a salary of two thousand dollars per annum; and in consideration that the complainant would give his particular attention to the interests of the defendant in the Fur Company during the time he should be so employed, the complainant should receive to his own use the dividends and profits, and was to sustain the loss, if any, arising from ten shares of the capital stock of the company which belonged to the defendant individually—the par value of each share being three hundred dollars. Also, that the time he was to remain in the service of the defendant was left indefinite, but the agreement in relation to the dividends and profits and the losses on the shares of stock was to continue so long as the complainant remained in the employ of the defendant; and the dividends or profits were to be paid to him whenever the same could be ascertained or the engagement with the defendant should be determined. The bill then alleged that under this agreement he entered into the employment of the defendant and continued in his employ from the month of May one thousand eight hundred and twenty-three until the month of April one thousand eight hundred and twenty-eight; and that the defendant received a large amount of money from the Fur Company as dividends or profits arising from the ten shares of stock.

The defendant, in his answer, gave a different version of the agreement. He stated that being president of the Fur Company and about to leave the United States for Europe he did, as such president and not otherwise, agree with the complainant to retain him in the service of the company as secretary at a salary of two thousand dollars during the time he should continue in the service of the company. He admitted that no definite time was agreed upon; also, that being largely interested in the success of the company

he did further agree, on his own behalf, to allow the complainant the nett profits or dividends upon ten shares belonging to the defendant individually, while it was the understanding that the complainant was to bear the loss and pay interest on the capital or par value of the shares—being three hundred dollars each—and his allowance of profits was to continue so long as he remained in the service of the company under the agreement. The defendant denied that any agreement was made for the complainant's entering into the service of the defendant or that the complainant was to give his particular attention to the defendant's interest in the Fur Company. Nor was he to receive the dividends or profits as long as he remained in the employ of the defendant: for he did not then enter into such employ, but was engaged by the company exclusively.

It appeared in proof that the complainant entered upon the service under the contract in April one thousand eight hundred and twenty-three ; and continued therein until the month of April one thousand eight hundred and twenty-four. He then entered into a new contract with the firm of John Jacob Astor and Son to serve them as their agent in China, for a period not exceeding three years, at a salary of five thousand dollars a year and certain perquisites, engaging to devote his time and attention exclusively to the business of such agency ; and under this engagement he left the United States for Canton and was absent until the autumn of the year one thousand eight hundred and twenty-five—a period of about eighteen months. On his return to New-York, he resumed his former situation in the service of the company ; was re-appointed its secretary ; and continued in such service until sometime in the year one thousand eight hundred and twenty-eight. In the meantime, no dividend had been declared upon the stock of the company ; nor was any made until the year one thousand eight hundred and thirty, when, upon each share at the par value of three hundred dollars, a dividend or profit of about two hundred and ninety dollars was paid to the shareholders. Ten shares of stock, the profits upon which were claimed by the complainant from one thousand eight hundred and twenty-three to one thousand eight hundred and twenty-eight, stood in his name on

the books of the company from the eighth day of September one thousand eight hundred and twenty-three to the thirty-first day of August one thousand eight hundred and twenty-seven; and they were then re-transferred to the defendant. The amount of profits at this time was not ascertained; and in making the transfer, there was no express reservation of claim or right to profits by or to the complainant. The evidence was that up to the year one thousand eight hundred and twenty-three, the business of the company had been fluctuating; while, since that period, it had been uniformly prosperous: but what the profits had been each year was not proved.

Mr. *W. M. Price*, for the complainant.

Mr. *D. Lord*, for the defendant.

THE VICE-CHANCELLOR :—The principal difference between the parties is, in regard to the complainant's being retained in the service of the defendant or of the American Fur Company ; and also, as to the duration of service. But, whatever may have been the true agreement in this respect, it appears to me that the result, upon the law of the case, must be the same.

The weight of evidence is in favor of the defendant's statement of the agreement, namely, that the complainant entered into the service of the company, and was to be allowed the profits or dividends only while he continued in such service under the agreement. But, supposing the agreement to have been to the effect alleged in the bill, even then it is very doubtful whether the same can be considered as subsisting for any longer period than about one year, that is, to the time of the complainant's departure for Canton. This question then presents itself, whether, as there was no dividend during the time, there can now be an apportionment of the dividend which was afterwards made by the company, and received by the defendant upon the ten shares ?

Such an apportionment cannot be made upon any just principle, without an investigation into the affairs of the company, commencing with the year one thousand eight

hundred and twenty-three, in order to ascertain its nett pro-
fits or gains in each year, and from year to year to the time
the complainant might be entitled to the profits. It is not
to be supposed the profits were the same for a period of
about seven years, at the end of which time the aggregate
of nett profits amounted to nearly one hundred per cent. on
the capital of the company. For if so, why were not annual
dividends made by the company? The fact of a dividend
being so long deferred is, of itself, pretty conclusive evidence
to show that the business of the company was so extended
as not to allow the actual nett profits to be sooner known;
and hence, the difficulty of ascertaining how, at what times
or seasons in particular the profits were realized. This
may be one reason why courts will not undertake an appor-
tionment in cases of this sort. Another is, that dividends
upon stocks or funds are payable periodically out of the
profits or earnings of the institution, but how or when they
accrue is for the corporate body or association itself to as-
certain; and when ascertained and declared it becomes an
entire sum due on each share to the stockholder. When,
therefore, a contract is made in relation to dividends or pro-
fits, as in the present case, it must be deemed to have refer-
ence to the dividends or profits to be ascertained and de-
clared by the particular company and not to the growing
profits from day to day or month to month to be ascer-
tained upon an investigation by third persons or courts of
justice into the accounts and transactions of the company.

The rule in relation to apportionment appears to be well
settled. In general cases of periodical payments becoming
due at intervals, and not accruing *de die in diem,* there can
be no apportionment. Annuities, therefore, and dividends
from money in the funds are not apportionable: *Pearly* v.
*Smith,* 3 Atk. 261; *Sherrard* v. *Sherrard,* Ib. 502; *Wilson*
v. *Harman,* 2 Ves. Senr. 672, and S. C. Ambl. 279; *Rash-
leigh* v. *Master,* 3 Bro. C. C. 101. But, interest upon money
put out on bond and mortgage, notwithstanding it is express-
ly made payable half-yearly or quarterly, may be appor-
tioned: for although it is reserved at fixed periods, the same
accrues and becomes due *de die in diem* for the forbearance
of the principal, and hence there is no difficulty in making

an apportionment for any given time—every day's interest being the same: *Banner* v. *Lowe*, 13 Ves. 135; *Edwards* v. *The Countess of Warwick*, 2 P. Wms. 176.

An exception to the general rule has been introduced in the instance of annuities for maintenance of infants and of married women living separate from their husbands; and which, perhaps, may be extended to all cases where it is clearly intended for maintenance: *Hay* v. *Palmer*, 2 P. Wms. 501; *Howell* v. *Hanforth*, 2 Black. Rep. 1016. Apportionment in such cases is founded upon the necessity of maintenance so long as the party lives; but if not necessary, as where the annuity to a married woman is not for her separate maintenance, it shall not be apportioned at her death: *Anderson* v. *Dwyer*, 1 Sch. & Lef. 301.

I am of opinion the present case is within the rule against apportioning dividends; and upon this ground the bill must be dismissed, with costs.