### HODGES *vs.* W. S. & D. W. SHULER.

An instrument executed in the name of a rail road company, by its president and treasurer, by which such company, in four years from date, for value received, promised to pay, in Boston, to A. and B. or order, one thousand dollars, with interest thereon, "payable semi-annually, as per interest warrants hereto attached, as the same shall become due; or upon the surrender of this note, together with the interest warrants not due, to the treasurer, at any time until within six months of its maturity, he shall issue to the holder thereof ten shares in the capital stock in said company in exchange therefor, in which case interest shall be paid to the date to which a dividend of profits shall have been previously declared," &c.; was *held* to be a promissory note, negotiable, and the contract made by indorsing it, to be the usual contract of an indorser of negotiable paper.

*Held also*, that by the law of the state of Massachusetts, where the note was executed, and made payable, and where it was indorsed, the indorser, by his indorsement, made the same contract as the indorser of a promissory note makes in this state, viz: that if the drawer did not pay the note at maturity, he, the indorser, would pay it, in case the usual steps were taken to charge him.

Contracts are to be held to mean what the law of the place where they are made holds them to mean. For ascertaining the tenor, the interpretation, and the nature of a contract, the *lex loci contractus* governs; for deciding what *remedy* is applicable to the contract so interpreted, the *lex fori* governs.

A notice of protest, which gives the date, time of payment, amount, names of drawer, and payees, and the indorsement, of a promissory note, without stating its number, is sufficient, although it appears that at the time of the protest there were four other notes precisely like the one protested, in terms and amount, and distinguishable from that and from each other only by different numbers upon each; the *number* of a promissory note being no part of the instrument.

Where an instrument describes itself as being a promissory note, and on its face it purports to be *negotiable*, by being payable to A. and B. "or order," and the payees indorse it in blank, and thus pass it to the holder as a negotiable promissory note, they will be *estopped* from denying that it is such.

APPEAL from a judgment entered at a special term, after a trial at the circuit. The complaint alleged that on or about the 1st day of April, 1850, the defendants being partners in business, under the name of W. S. & D. W. Shuler, and being the payees mentioned in the promissory note hereinafter set forth, indorsed to said plaintiff said promissory note, of which the following is a copy, viz :

Hodges *v.* Shuler.

"Rutland & Burlington Rail Road Company.

No. 253.                                   $1000.

*Boston, April 1st, 1850.*

In four years from date, for value received, the Rutland & Burlington Rail Road Company promises to pay, in Boston, to Messrs. W. S. & D. W. Shuler or order, one thousand dollars, with interest thereon, payable semi-annually, as per interest warrants hereto attached, as the same shall become due, or upon the surrender of this note, together with the interest warrants not due, to the treasurer, at any time until within six months of its maturity, he shall issue to the holder thereof, ten shares in the capital stock in said company, in exchange therefor, in which case interest shall be paid to the date to which a dividend of profits shall have been previously declared, the holder not being entitled to both interest and accruing profits during the same period.            T. FOLLETT, President.

SAM HENSHAW, Treasurer."

That there was attached to said promissory note an unpaid interest warrant, which was so attached at the time of the indorsement of said note by the defendants, of which the following is a copy, viz:

"Interest Warrant, No. 8.

On the 1st day of April, 1854, the Rutland & Burlington Rail Road Company will pay the bearer, at the office of its treasurer in Boston, thirty dollars for interest on its note No. 253.                          SAM HENSHAW, Treasurer."

That at the maturity of said promissory note and said interest warrant, the same were duly presented for payment at the office of the treasurer of the said Rutland and Burlington Rail Road Company, in Boston, and payment thereof was duly demanded and refused, whereupon the same were duly protested for non-payment, and due notice thereof was given to said defendants; that said plaintiff was the lawful owner and holder of said note and said interest warrant; that there was due thereon and still unpaid, from said defendants to the plaintiff, the sum of $1030, and interest on the sum of $1000 from the 4th day of April, 1854, at the rate of six per cent per annum,

for which said sum of $1030, and interest as aforesaid on $1000, the plaintiff demanded judgment against said defendants, besides costs and expenses of protest.

The answer was a general denial of the matters set forth in the complaint.

The cause was tried at the Rensselaer circuit, in June, 1855, before Justice HARRIS. A trial by jury having been waived by the respective parties, the counsel for the plaintiff introduced and read in evidence the note and interest warrant mentioned and set forth in the complaint, which note was indorsed on the back thereof by the defendants, as follows : "W. S. & D. W. Shuler." The plaintiff's counsel then introduced and read in evidence a stipulation of the defendants, of which the following is a copy : "It is hereby stipulated, by the said defendants, that the facts hereinafter set forth are true, and that the said defendants will admit the same on the trial of the above entitled cause, subject to any exceptions that may be had and taken to the admissibility of the same or any part thereof, to be made by the defendants to the trial of the said cause. 1. That on the 4th day of April, 1854, Adolphus Bates, a notary public in and for the county of Suffolk, in the state of Massachusetts, at the request of the Bank of Commerce, located in the city of Boston, to which bank the plaintiff had sent for collection the promissory note mentioned in the complaint in this action, did present the said note at the office, in Boston, of the treasurer of the Rutland and Burlington Rail Road Company, the place of business in Boston of the said company, to the said treasurer, and there demand payment of the same of the said treasurer, which was refused ; and thereupon did notify said defendants thereof, by depositing on the day aforesaid, in the post office in Boston, a written notice, of which the following is a copy, viz :

"City of Boston, April 4, 1854.
To Messrs. W. S. and D. W. Shuler.

Please take notice that a promissory note made by S. Henshaw, treasurer, for one thousand dollars, dated April 1st, 1850, payable in four years, in favor of yourselves and indorsed by

you, has been presented by me to the office of the treasurer, and payment being duly demanded was refused; whereupon, by direction of the holder, the same has been protested, and payment thereof is requested of you.

ADOLPHUS BATES, Notary Public."
And which notice was inclosed in an envelop, upon the outer side of which was the following direction: 'Messrs. W. S. and D. W. Shuler, Amsterdam, N. Y.' That on the said 4th day of April, 1854, and for ten years previous thereto, the said defendants resided in Amsterdam, in the state of New York; that said Amsterdam was the name of the post office at which said defendants then received their letters; that said notice was received by due course of mail, and that the post office mark thereon was 'Boston, April 5.' 2. That for some time immediately preceding the date of the said note, said defendants were engaged as contractors in building the road of the said rail road company, and on or about the date of said note received from the said company in satisfaction of their said contract and work, the said note, together with four other notes, each of the same date and amount and in every respect corresponding with said note, except that the numbers of all of said notes, marked thereon, were different, each from the other; that the transfer by said defendants of the note mentioned in said complaint was in the city of Boston and state of Massachusetts, and that each of said notes was transferred by said defendants shortly after the date of the said notes, in the same manner as the note in the complaint set forth; that Sam Henshaw (whose name is signed as treasurer to the note mentioned in said complaint) never signed as treasurer or otherwise, any note in which said defendants were named as payers, except the notes above mentioned. 3. That the original note, interest warrant and notice of protest, shall be produced and given in evidence on said trial by the party having possession of the same."

The original notice of demand and non-payment was then produced by the defendants, being as set out in the foregoing stipulation. The plaintiff's counsel also introduced in evidence,

a printed volume of the revised statutes of the state of Massachusetts, and the books of reports hereinafter referred to, of cases adjudged in the courts of Massachusetts, and so duly proved the same as to make them presumptive evidence of the statutes and common law of Massachusetts, as far as competent for that purpose; and said plaintiff's counsel read from said volumes of statutes, section 5 of chapter 33 therein, and from said books of reports, the following adjudged cases: (*Jones* v. *Fales*, 4 *Mass. Rep.* 245, &c.; *Joselyn* v. *Ames*, 3 *id.* 274; *Sawyer* v. *Stimpson*, 8 *id.* 260; *Smith* v. *Whitney*, 12 *id.* 5; *City Bank* v. *Cutter*, 3 *Pick.* 419; *Switzer* v. *French*, &c. 13 *Metc.* 262; *S. C.* 2 *Cush.* 310.)

The testimony being closed, the case was submitted to the judge upon written briefs. He subsequently decided that the plaintiff was entitled to judgment for the sum of $1148, besides costs. To which opinion and decision of the court, the defendants proposed and made the following exceptions: 1st. The court erred in deciding that the defendants were liable upon the instrument set forth in the complaint, by their indorsement. 2d. The court erred in deciding that the notice of demand and refusal to pay, served upon the defendants, was sufficient to charge the defendants as indorsers. 3d. The court erred in deciding that the plaintiff was entitled to recover in this action. 4th. The opinion and decision are contrary to law. 5th. The opinion and decision are contrary to the evidence in the cause. And from the judgment entered upon such decision the defendants appealed to the general term.

*W. A. Beach*, for the appellants. I. The instrument set forth in the pleadings and evidence, is not a negotiable promissory note, under the law merchant. It was not, therefore, transferable by mere indorsement and delivery. (1.) The acknowledged legal definition of a promissory note is, " *a written engagement by one person, to pay another person therein named, absolutely and unconditionally, a certain sum of money, at a time specified therein."* (*Story on Promissory Notes*, § 1.) It is seen that the promise must not only be absolute,

Hodges *v.* Shuler.

but must be *for the payment of money only.* (*Jerome* v. *Whitney*, 7 *John.* 321. *Thomas* v. *Roosa, Id.* 461. *Atkinson* v. *Manks,* 1 *Cowen,* 691, 707. *Cook* v. *Satterlee,* 6 *id.* 108. *Clark* v. *King,* 2 *Mass. Rep.* 524. *Worden* v. *Dodge,* 4 *Denio,* 159. *Austin* v. *Burns,* 16 *Barb.* 643.) (2.) These authorities abundantly show the uniform rigor with which the requirement of an absolute money payment has been enforced. The case of *Austin* v. *Burns,* (*supra,*) decides, that if the instrument contains *stipulations to do other things in addition to the promise to pay money,* it is not a promissory note. The paper in the case at bar plainly falls within that principle. It is, however, objectionable within the above decisions, in that it contains no promise for the payment of money *absolutely.* It is in the alternative. It may be for money *or* stock, depending upon a contingency. (*Walrad* v. *Petrie,* 4 *Wend.* 575.) (3.) The rules governing bills of exchange and promissory notes, are *sui generis* and arbitrary. The necessities of commerce have invested them with peculiarities and privileges. But these are definite and fixed; and the law is sternly solicitous, to exclude all ambiguous instruments from these advantages. (4.) It is no answer to this objection that the contingency on which the payment of money is made to depend, is within the control of the payee. It is sufficient that the promise is not absolute and unconditional. The law has fixed its own definition of a promissory note. It has established certain and plain requisites. These cannot be relaxed to embrace others, which may be thought to fall within its policy.

II. This case does not come within the doctrine which under some circumstances holds an indorser of non-negotiable paper, liable as maker or guarantor. (*Dean* v. *Hall,* 17 *Wend.* 214. *Seabury* v. *Hungerford,* 2 *Hill,* 80. *Griswold* v. *Slocum,* 10 *Barb.* 402.) (1.) The paper here, is negotiable by its terms. It is payable to order. All the cases cited limit the doctrine they affirm to instruments non-negotiable by their terms. In *Seabury* v. *Hungerford,* (*supra,*) it was expressly held that an indorser of negotiable paper cannot be charged as maker or guarantor. (2.) If, however, the defendants may be held as

makers or guarantors, it can only be done by showing the original agreement out of which their liability arises. The plaintiff as naked holder of the note, without proving the agreement of transfer, cannot recover. No presumptions arise, as in case of a promissory note, from the possession of the paper. The indorsement here has no greater efficiency than if it appeared upon a contract to build a ship. (16 *Barb.* 643.) (3.) But the doctrine under consideration has application to no other instruments than promissory notes ; and has never been otherwise advanced. There is no danger of failure of justice. Equity has full power to relieve. It is her peculiar jurisdiction. But the plaintiff must allege and prove more than if he held a valid note and indorsement, which by their own vitality created an obligation against the defendant. (4.) The question is one of *remedy,* not of *obligation.* And hence the Massachusetts decisions cited are of no significance. Parties appealing to the laws must conform to their requirement, no matter where their rights accrued.

III. It follows that no liability is shown against these defendants. The only evidence on the point is the undenied allegation in the pleadings, that the defendants indorsed the note to the plaintiffs, and its production, with their firm name on the back. That, *per se,* creates no obligation.

IV. Regarding the paper in suit as a promissory note, *stricti juris,* the defendants have not been regularly charged as indorsers. The notice of non-payment sent to them was imperfect. It appears that, at the time of the protest, there were four notes precisely alike in terms, and distinguishable only by different numbers upon each. · And all of them were transferred by the defendants shortly after their date, in the same manner as the one in suit. The notice of protest makes no identification referring to either. (1.) The notice of dishonor must contain " a description of the note, so as to ascertain its identity." "There should be a sufficiently definite description of the note to enable the party to know to what one in particular the notice applies." (*Story on Promissory Notes,* §§ 348, 349.) (2.) Whenever the notice is insufficient, either upon its face, or

through evidence *aliunde*, it cannot be sustained without proof that the indorser was not misled. It must appear that the notice, with accessory facts, fully apprised him of the particular note to which the former applied. It is only by auxiliary evidence of this character that a notice has ever been upheld, when various notes are shown to which it might indiscriminately apply. (*Cayuga Co. Bank* v. *Warden*, 1 *Comst.* 413. *S. C.* 2 *Seld.* 19. *Beals* v. *Peck*, 12 *Barb.* 245. *Youngs* v. *Lee*, 2 *Kern.* 551.) (3.) The objections to this notice of dishonor, apparent upon the proof are, 1st. There were four notes, to either of which it might apply, without any designation of the one to which it was referable. 2d. It does not describe the note as that of the Rutland and Burlington Rail Road Company. 3d. It falsely describes it as made by " S. Henshaw, Treasurer." It was also executed by " T. Follet, President." The whole notice was calculated to mislead, as to the identity of the note intended. These objections are answered by no proof of circumstances, (as in the case of *Cayuga Co. Bank* v. *Warden*, (*supra*,) showing that, nevertheless, the defendants were not misled. The evidence that *Henshaw* never executed any but the four notes mentioned, in which the defendants were named as payees, is unsatisfactory, and affects only the last two objections. These notes were those of the *company*, not of the *treasurer*. They were so in law, and so treated. And were undoubtedly so remembered and described by the defendants.. The fact that *Henshaw* signed no others, did not, therefore, relieve the uncertainty of this notice. Had it appeared that the *company* executed no others to which the defendants were parties, it might have obviated the two last specified defects in the notice. The precise point raised by the first objection, has been decided in the court of appeals, subsequent to the case of *Cayuga Co. Bank* v. *Warden*. (*Cook* v. *Litchfield*, *Selden's Notes*, *Dec.* 1853, *p.* 23.)

*John B. Gale*, for the respondent. I. The note has all the requisites of a negotiable promissory note. It is a promise for the *unconditional* payment of a *certain* sum of *money* at a *specified time*, to the order of the payee. (*Henschel* v. *Mah-*

*ler*, 3 *Denio*, 428.) (1.) There is, it is true, a contemplated possibility that performance of that promise may not be required—that the note may be surrendered before maturity, and exchanged for stock. The promise itself is, however, *absolute* and *unconditional*. Every promissory note, equally with this, is upon *condition* that it shall remain outstanding at maturity, and not have been previously taken up or satisfied by payment, renewal, or other means. (2.) It is not for the payment of money *and* the performance of any other act. In no event could the holder require money and stock. Stock could be required only upon a *surrender of the note*, and payment of money could not be required until six months after the holder's right to exchange it for stock had ceased. At its maturity payment of money was all that could be required; and such payment may be enforced without that hindrance which attends inquiries concerning specific performances and unliquidated damages, and by reason of which, contracts for the payment of money *and* the performance of some other act are denied the character and advantages of commercial paper. (3.) It is not in the alternative. A promise is an alternative one only when the promisor may fulfill it in either of two specified ways. Otherwise every promise is an alternative one, for the same may be *satisfied* (*legally* fulfilled) in whatever way the promisee may consent to.

II. The insertion in the note of the agreement to issue certain stock upon its surrender, has no effect upon the character of the note, as such, or upon the rights and liabilities of the indorsers and indorsee. (1.) The note retains, notwithstanding such insertion, every requisite and feature of a negotiable promissory note, and hence, it follows necessarily, that said agreement is without effect upon the liability of the defendants as indorsers. (*Pool* v. *McCrary*, 1 *Kelly's Rep.* 319.) Action on note at foot of which was a memorandum that the same might be discharged by releasing the plaintiff from his indorsement on another note therein described. *Held :* " By an examination of the instrument sued on, we hold that it wants none of the essential qualities of a negotiable note, and that it was right to declare on it as such. It is for the absolute and

Hodges *v.* Shuler.

unconditional payment of $1000 on a day fixed. There is a note or memorandum subjoined to the foot of it, specifying one of the modes in which it may be discharged." (2.) The converse of this point is not supported by any adjudged case or elementary writer. (3.) The principle upon which money promises that are conditional or alternative, or uncertain as to amount or time of payment and the like, are denied the character of negotiable paper, is, that that character and the consequence of a free circulation should not be afforded to paper that is uncertain in its terms, or involves inquiry about extrinsic facts. ·This note is *certain* and *definite* in its terms, and no extrinsic fact has to be determined, in order to enforce it, except the fact common to all negotiable paper, that it is held by the party seeking to enforce its payment. (4.) The note was evidently regarded by the parties as a promissory note, and indorsed accordingly.

III. The contract of indorsement is governed by the law of Massachusetts; and by that law the defendants are liable as indorsers. (*Jones* v. *Fales*, 4 *Mass. R.* 245.)

IV. If the note is not a negotiable promissory note, then the defendants are and should be liable as guarantors. (1.) Such is the law in Massachusetts, by which this question is determinable. (*Joselyn* v. *Ames*, 3 *Mass. Rep.* 274. *Sweetzer* v. *French*, 13 *Metc.* 262. *S. C.* 2 *Cush.* 310.) Held, that an indorser on an unnegotiable note is liable to indorsee, and that the latter may write a guaranty over the indorsement. (2.) Such is also the law in this state. (*Griswold* v. *Slocum*, 10 *Barb.* 402, *and cases there cited.*)

V. Complaint states the fact of indorsement. The nature and extent of the liability thereby incurred is a question of law, and not a *fact* to be alleged. Hence the complaint is sufficient, whether the defendants are indorsers or guarantors. But if not, it may now be amended; and there may yet be written over the indorsers' names whatever agreement that indorsement imports.

VI. The notice of protest was sufficient. (1.) It was only necessary to give a general description of the note. It was not ne-

cessary to state the number of the note, and thereby to distinguish it from notes otherwise like it. That there were such other notes did not then appear. The color of the ink or paper, or any other minute distinctive feature might as well be required to have been specified. It did not concern the defendants which one of the five notes was protested; but if it did it was their fault and not the plaintiff's, that a general description of the note did not give them all the desired information. (2.) The defendants were contractors on the road of the rail road company, and received the five notes in payment for work, and must have known the officers of the company—certainly the treasurer. The defendants knew by whom the notes were executed; indorsed the note in question; knew that the indorsement was outstanding; knew amount and date of note, and when it matured. The descriptive addition to the name of "Sam. Henshaw" plainly indicated that the note referred to was made by him as treasurer of some company, and the defendants had never indorsed any paper made by said Henshaw, except said five notes. Under such circumstances it is scarcely possible, and by no means probable, that the notice failed to inform the defendants that it referred to one of said five notes. (*Cayuga Co. Bank* v. *Warden,* 1 *Comst.* 413. *S. C.* 2 *Seld.* 19. *Smith* v. *Whiting,* 12 *Mass. Rep.* 5.)

VII. Whether the notice of protest under the attending circumstances gave the defendants the required information, is a mixed question of law and fact; and having been found for the plaintiff, the finding should not be reversed unless either the conclusion of fact is without evidence, or such finding necessarily involves an error of law. (2 *Seld.* 19.) What the contract of indorsement imports, and what information of non-payment had to be given to the indorsers as a condition precedent to their liability, are questions of law; but whether or not that legally required information was given in this instance, is a question of fact. The position that questions dependent upon ascertained facts are questions of law, is applicable only to *ultimate facts,* and not to those facts (which, in strict legal phraseology, are *evidence* as distinguished from *facts,*) from which another and

ultimate fact is deduced.   In this case the ultimate fact that had
to be ascertained was, whether certain requisite information was
given to the defendants—and that *fact* depended upon, and had
to be deduced from, the evidence afforded by the notice of pro-
test and certain extrinsic circumstances.   Again ; because of
that extrinsic evidence, the question involved was one of fact,
although, otherwise, it had been one of law.   (*Smith* v. *Whi-
ting*, 12 *Mass. Rep.* 5.)   Action against the indorser of Jothan
Cushman's note.   The notice described it as Jothan Cushing's
note.   The question was left to the jury.   Parker, Ch. J., held :
" It was properly left to the jury to decide," &c.

VIII. The note being payable to the defendants *or order*, is
negotiable, and it having been indorsed in blank, possession is
presumptive evidence of ownership.   Such is the law in this
state : and such is unquestionably the law in Massachusetts.   (*See
cases in Mass. Rep. above cited.*)

*By the Court,* GOULD, J.   In this case there are three prin-
cipal points to be considered.   1st. What, by the law of this
state, is the primary contract (of the rail road company ;) and
what the contract made by indorsing it ?   2d. What, by the
law of Massachusetts, is that primary contract ; and what the
contract made by indorsing it ?   3d. If, by any law binding this
court, the primary contract be, or be so like, a negotiable note,
as to require it to be, or make it capable of being, properly
protested for non-payment, and the contract made by indorsing
it, be such that the defendants were entitled to have such pro-
test made, and due notice thereof given to them, was there
such protest made, and such *due notice* thereof given, in this
case ?

As to the first point : the very strictest rule,.as to what con-
stitutes a promissory note, is that it must be a written promise
to pay, (to a person named in it,) absolutely and unconditionally, a
certain sum of money at a certain specified time.   In this case there
is no claim that the contract is not a written promise to pay, (to
a person named in it,) a certain sum of money at a certain spe-
cified time.   But, (say the defendants,) there is a subsequent

provision, that "this note," up to a time six months before the
money was payable, might (at the election of the holder) be sur-
rendered ; and the holder on such surrendry, should be entitled
to receive its amount in stock of the company, instead of money.
And it is claimed that this provision takes away the essential
quality, that the money must be payable absolutely and un-
conditionally.   To this, the answer is, that to the promise to
pay the money, there is attached no condition and no uncer-
tainty.   Unless, (not later than six months *before* the money
was to be paid,) the holder saw fit to surrender and cancel the
promise ; if it remained in existence to the time when it prom-
ised to pay any thing, it remained an *absolute* and *unconditional*
promise to *pay money only.*   From its inception there was no
instant at which it could have been paid by any thing but
money.   And there never was *any promise* to pay any thing
else than money.

With these views, I, of course, hold the primary contract to
be a promissory note, negotiable ; and the contract made by
indorsing it, to be the usual one of an indorser of negotiable
paper.

The materiality of the second point is found in the fact, that
every contract, (sealed, unsealed or verbal,) is the agreement of
the parties as they understand it ; unless such understanding
(as claimed or attempted to be proved) be against the plain mean-
ing of the terms used in a written instrument.   Contracts rest-
ing on this basis, are to be held to mean, what the law of the
place where the contract was made held them to mean.   For
ascertaining the *tenor*—the *interpretation*—the *nature* of the
contract, the *lex loci contractus* governs.   For deciding what
*remedy* is applicable to the contract, (so interpreted,) the *lex
fori* governs.   In this case, the primary contract was made,
and was to be performed, in the state of Massachusetts.   The
indorsement was also made there.   In the Massachusetts decis-
ions I find nothing to change the position taken by the plaintiff,
(*Jones* v. *Fales,* 4 *Mass. Rep.* 254,) " that *all* cash notes are
negotiable ; and that all notes for merchandise may be sued by
the promisee against the promisor ; and when indorsed, by the

Hodges *v.* Shuler.

indorsee against the indorser." By the laws of that state, then, an indorser of any thing purporting to be a note, (whether for the payment of money, or any thing else, and whether or not by our law negotiable,) makes thereby the same contract as does (with us) the indorser of a negotiable promissory note; that is, if the drawer do not pay at maturity, the indorser will, if the usual steps be taken which would legally charge an indorser of a negotiable promissory note.

The defendants claim that this Massachusetts law refers only to the *remedy ;* as the case cited (and others) speaks of the *manner of declaring* (against such an indorser) as being the same as " if the note were negotiable." But were not the law as is above stated, no manner of declaring could supply the legal basis, (the right of action) on which the declaration is founded.

The *third* question being thus reached, I cannot say that I deem it difficult of solution. The notice of protest, as a *notice,* has every element of sufficient certainty ; date, time, amount, drawer, payees, indorsement, are all so set forth as to leave hardly a possibility of misleading the indorsers. It is true, the defendants say, (and it is admitted,) that there had once been in existence four other notes, answering precisely to all these points of description ; and that the whole five were precisely alike, except the numbering. And then it is claimed that this notice is imperfect, because it did not state the number of this note to distinguish it from each of the other four. But the number is no part of the note ; nor does the fact that four, (or four hundred,) other notes were just like it, except the number, make the number any part of the note. These defendants were the payees of all the five. And if they wished to make such a distinction between the several notes, that a notice of non-payment would identify each one ; it was *their* business to make such a distinctive and substantive variance between the notes, (making each differ from every other,) that its description would be a legal essential to a good notice, irrespective of the fact of the existence of the other four. Nor do I see any thing in the cases, cited for the defendants, to vary this opinion. They

are all, (the case in *Selden's Notes*, as well as the rest,) speaking only of notices *imperfect on their face.* Then, and then only, are facts outside of the papers to be looked into, to see if there were really, and fairly, any ground for claiming to be actually misled by the notice given. The notice, in this case, is not imperfect on its face, and is sufficient.

There is a further reason why (if the question of the writing being a promissory note be considered a close and doubtful one) these defendants should be held on it as a promissory note. It describes or recites itself to be one, ("upon the surrender of this note ;") on its face, it purports to be negotiable, (being payable to them " or order ;") and by indorsing it in blank, they have passed it to the holder as a negotiable promissory note. They shall not, now, be permitted to deny that it is such. They must be held *estopped* from doing so.

The decision of the special term should be affirmed.

[SARATOGA GENERAL TERM, January 6, 1857. *James, Rosekrans* and *Gould,* Justices.]