A. Vander Horst, as Sole Executor, etc., of James P. Carson, Deceased, Plaintiff, v. Benjamin R. Kittredge, Defendant.

First Department, April 11, 1930.

*Hugh N. W. Ronalds* of counsel [*Robert W. B. Elliott* with him on the brief; *Harrison, Elliott & Byrd*, attorneys], for the plaintiff.

*George F. Canfield* of counsel [*Arthur T. Sawyer* with him on the brief; *Satterlee & Canfield*, attorneys], for the defendant.

MERRELL, J.   The facts upon which this controversy depends have been stipulated in writing by the respective parties.

The plaintiff is the sole executor under the last will and testament of James P. Carson, deceased.   In 1909 and prior thereto James P. Carson owned a plantation in the State of South Carolina.   The defendant, Benjamin R. Kittredge, wished to acquire said plantation.   Negotiations were entered into in Charleston, in the State of South Carolina, which resulted in an agreement in writing, dated March 5, 1909, between the said Benjamin R. Kittredge, James P. Carson and Union Trust Company of New York.   A copy of said agreement is annexed to the submission, marked " Exhibit A," and provides as follows:

" WHEREAS, JAMES PETIGRU CARSON, has agreed to sell to B. R. KITTREDGE his property on Cooper River, South Carolina, known as ' Dean Hall,' and B. R. KITTREDGE has agreed to purchase the same and to pay therefor the sum of Ten Thousand (10,000) Dollars in cash on the delivery of the deed on April 1, 1909, at the office of                              in the City of Charleston, South Carolina, together with an annuity of Three Thousand (3,000) Dollars per annum as hereinafter provided; and

" WHEREAS, said B. R. Kittredge has agreed to deposit with the Union Trust Company of New York, sufficient collateral to secure the faithful performance of this agreement.

" Now, THIS AGREEMENT between said B. R. Kittredge, party of the first part, said James Petigru Carson, party of the second

part, and the Union Trust Company of New York, party of the third part, WITNESSETH:

"*First.* The party of the first part for himself, his heirs, executors and administrators, covenants and agrees to pay to said party of the second part the sum of Three Thousand (3,000) Dollars per annum, payable in equal quarterly payments of seven hundred and fifty (750) dollars each on the first days of January, April, July and October as long as the party of the second part shall live, the first payment to be made on July 1st, 1909. Such payments shall be made by deposits to the credit of the party of the second part in said Union Trust Company or such bank or trust company as said party of the second part shall in future designate in writing.

"*Second.* As security for the payment of the sums of money hereinabove specified the said party of the first part agrees to deposit with the said party of the third part within five days after the delivery of the deed as above specified, the following securities, to wit:

"20 Pennsylvania Railroad $3\frac{1}{2}\%$ Bonds, due 1915.

"10 Butte & Madison River Joint 6% Bonds.

"20 shares Delaware, Lackawanna & Western Railroad Company stock.

"Interest or dividends from securities deposited by the party of the first part shall be paid to the party of the first part. With the approval of Robert L. Harrison and the party of the third part other securities may be substituted for those deposited by the party of the first part, but the party of the first part agrees that he will at all times keep with the party of the third part securities of a value exceeding by ten per cent the amount necessary to buy the annuity of three thousand dollars as herein provided. Whenever the value of the securities so held shall exceed by more than ten per cent the amount necessary to buy the annuity, the party of the first part may withdraw such excess.

"*Third.* In the event that the said party of the first part shall fail to make any of the payments as herein provided, and shall remain in default for a period of thirty (30) days, the said party of the third part shall, upon the written demand of the party of the second part, proceed to sell said collateral at public auction in the City of New York, and out of the proceeds derived from such sale shall first pay over to the party of the second part any installment which may be in default, and out of the balance shall proceed forthwith to purchase an annuity of Three Thousand (3,000) Dollars per annum for the life of the party of the second part, payable in equal installments of seven hundred and fifty

(750) dollars each on the quarter days specified in the first article of this agreement, and shall pay the balance, if any, to the party of the first part. But before proceeding to sell as above provided, the said party of the third part shall first give notice of its intention so to do to the said party of the first part by mail to an address furnished by him, and also to Wilmer, Canfield & Stone, 49 Wall Street, New York City, and shall not sell until the expiration of twenty days after serving such notice, and provided said party of the first part is still in default.

"*Fourth.* Upon the death of the said party of the second part any securities which may have been deposited with the party of the third part, which shall not have been disposed of as provided in the third article of this agreement, shall be returned to the party of the first part, his heirs, administrators or assigns.

"In Witness Whereof the parties of the first and second part have hereunto set their hands and seals, and the party of the third part has caused these presents ·to be signed by its Vice-President, this 5th day of March, Nineteen hundred and nine.

"B. R. KITTREDGE   [L.S.]

"J. P. CARSON   [L.S.]

"UNION TRUST COMPANY OF NEW YORK,

"By A. W. KELLY,

"*Vice-President.*

"Signed, sealed and delivered
    in the presence of
 "H. W. CONNOR as to
    B. R. Kittredge and J. P. Carson."

James P. Carson, the owner of said plantation, was a bachelor and agreed, therefore, that a part only of the purchase price be paid in cash, and that the remainder should be paid in the form of an income during his life. It is stated in the agreed statement of facts that said provision was for his support and maintenance, although the contract did not so provide. At the time of the making of the agreement James P. Carson was a resident of the State of South Carolina, whereas, the defendant Kittredge was then a resident of the State of California. The Union Trust Company of New York was a New York corporation, not domesticated in South Carolina. The terms of the written agreement aforesaid as between Carson and Kittredge were completed through the exchange of letters all in South Carolina. Copies of these letters are annexed to the submission agreement. It was therein stipulated that the suggestion for depositing the collateral with

the Union Trust Company of New York came from James P. Carson, as he wished the judgment of his New York lawyer, and the agreement, as executed, was drawn by New York lawyers. The amount of collateral provided for in the agreement was fixed on the basis of providing security sufficient to procure an annuity at life insurance rates in the event of default as per memorandum attached to the submission, marked "Exhibit E," the said rates being standard life insurance rates effective in 1909 for standard policies providing for non-apportionable annuity payments. The agreemer t was executed by Messrs. Carson and Kittredge in South Carolina and by the Union Trust Company in New York, and securities sufficient to conform to the terms of the agreement were delivered to and accepted by the Union Trust Company, and the said Union Trust Company, or its successors, now holds sufficient of the funds which were deposited upon the agreement to pay the existing claim of the estate of James P. Carson.

The initial payment of $10,000 was made by check drawn on a New York bank and delivered to James P. Carson in South Carolina. The quarterly payments during the life of James P. Carson were paid without exception by deposit to his credit in the bank of the Union Trust Company of New York, the last payment having been made on April 1, 1923. James P. Carson died testate June 27, 1923, and the defendant, Benjamin R. Kittredge, has refused to make any further payment. Plaintiff claims and demands that upon the foregoing facts he is entitled to payment of the sum of $725, being an apportionment of the annuity payable under the agreement dated March 5, 1909, for the period from April 1, 1923, to June 27, 1923, the date of James P. Carson's death, together with interest and costs of this action, which defendant denies and claims that no apportionment should be made covering the aforesaid period, and demands that judgment be entered for defendant denying plaintiff's contention, with costs to defendant. The controversy, therefore, submitted for decision is whether or not, upon the foregoing facts, the plaintiff is entitled to judgment in the amount of $725, with interest, being an apportionment of the annuity under the contract herein for the period from April 1, 1923, to June 27, 1923, the date of James P. Carson's death, or whether defendant is entitled to judgment denying plaintiff's contention. It is agreed between the parties that the court shall render such judgment as shall be proper on the foregoing facts.

It is plaintiff's contention that the contract between plaintiff's testator and the defendant, Kittredge, should be construed in accordance with the laws of the State of New York, and that under

section 204 of the Surrogate's Court Act plaintiff is entitled to an apportionment of the quarterly annuity installment which was to become due and payable on July 1, 1923. In short, that, under said statute, the plaintiff is entitled to an apportionment of so much of the quarterly annuity as would have been due and payable on July 1, 1923, as was measured by the period of plaintiff's testator's life during said quarterly period, and it has been agreed by the parties that the proportionate amount of such apportionment is $725. Plaintiff further claims that even if the annuity is to be governed by the common law in force in the State of South Carolina, it is nevertheless apportionable as one for support and maintenance.

Taking up the plaintiff's first contention, we are of the opinion that the contract between the parties must be construed with reference to the laws of the State of South Carolina, where the real property involved in the transaction was located, and where the contract itself was negotiated between the parties. As between Carson and Kittredge, the contract was entered into in the State of South Carolina, where the property sold was located, and that a part, at least, of the provisions of the contract was to be performed in that State. While it is true that one of the parties to the contract, namely, the Union Trust Company of New York, was a New York corporation, located here, the trust company was only a party to the contract to the extent of assuring the performance thereof by the defendant. The trust company was to be the depositary of collateral to secure the payment of the annuities under the contract. We are of the opinion that the contract must be interpreted and construed by the law of the place where the contract was made. (*Hodges* v. *Shuler*, 24 Barb. 68; *Stumpf* v. *Hallahan*, 101 App. Div. 383; *Union National Bank* v. *Chapman*, 169 N. Y. 538; *Franklin Sugar Refining Co.* v. *Lipowicz*, 247 id. 465; *Scudder* v. *Union National Bank*, 91 U. S. 406.) In *Hodges* v. *Shuler* (*supra*) the court said (at p. 80): " Contracts resting on this basis, are to be held to mean, what the law of the place where the contract was made held them to mean. For ascertaining the *tenor* — the *interpretation* — the *nature* of the contract, the *lex loci contractus* governs."

In *Stumpf* v. *Hallahan* (*supra*) the action was brought on a bond for a deficiency judgment on foreclosure of a mortgage covering New Jersey real property. In that case this court held that the rights and obligations of the parties were governed by the law of the State of New Jersey. The opinion in that case was written by Mr. Justice O'BRIEN and concurred in by the other members of the court, and stated (at p. 386) as follows: " Some of the general rules respecting the law of place summarized by the

appellant, which we regard as settled, may be stated: *First*, all matter bearing upon the execution, *interpretation* and validity of contracts, including the capacity of the parties to the contract, are determined by the law of the place where the contract is made (*Union Nat. Bank* v. *Chapman*, 169 N. Y. 538); *second*, all matters connected with its performance are regulated by the law of the place where the contract, by its terms, is to be performed; *third*, if no place of performance is mentioned in the contract, a presumption arises that the parties intend that it should be performed where it is made; *fourth*, contracts referring to the transfer of title to land are governed by the law of the place where the land is situated; *fifth*, all matters respecting the remedy to be pursued, including the bringing of suit, etc., depend upon the law of the place where the action is brought." (Italics are the writer's.)

The decision of this court in *Stumpf* v. *Hallahan* was affirmed by the Court of Appeals (185 N. Y. 550). In *Franklin Sugar Refining Co.* v. *Lipowicz* (*supra*) the Court of Appeals held that a contract made in the State of Pennsylvania must be construed in accordance with the laws of that State, and quoted from *Pritchard* v. *Norton* (106 U. S. 129) as follows: " The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

In *Scudder* v. *Union National Bank* (*supra*) the United States Supreme Court stated the rule as follows (at pp. 412, 413): " Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made."

In the absence of a plain intention on the part of the parties to the contract that the contract was to be construed in accordance with the laws of another State than that in which it was made, we are of the opinion that the *lex loci contractus* governs.

There is no statement in the submission as to the law of South Carolina on the subject of apportionment of annuities. In the absence of proof as to the law of South Carolina on the subject, we must assume that the New York common law prevails there. (*Southworth* v. *Morgan*, 205 N. Y. 293; *International Text Book Co.* v. *Connelly*, 206 id. 188.) The courts of this State will not take judicial notice of the statutes or common law of other States. Therefore, there being no proof as to the common law of South Carolina, we must assume that it is the same as the common law

of this State. Under our common law no provision whatever was made for apportionment of annuities. In accordance with our common law there can be no apportionment of such an annuity as is provided for in the contract in question. The leading case upon that subject is that of *Kearney* v. *Cruikshank* (117 N. Y. 95), where the Court of Appeals said (at pp. 97, 98) as follows: "At common law annuities were not apportionable, subject, however, to two exceptions, viz., where the annuity was given by a parent to an infant child (*Hay* v. *Palmer*, 2 P. Wms. 501; *Reynish* v. *Martin*, 3 Atk. 330), or by a husband to his wife living separate and apart from him. (*Howell* v. *Hanforth*, 2 W. Bl. 1016.) These exceptions were founded on reasons of necessity, and the presumption that such annuities are intended for maintenance and are given in view of the legal obligation of a parent to support his infant children, and of a husband to maintain the wife. But, with these exceptions, it was the uniform and unbending rule of the common law, recognized both by courts of law and equity, that annuities, whether created *inter vivos* or by will, were not apportionable in respect of time.

" This rule, it has been said, ' proceeds upon the interpretation of the contract by which the grantor binds himself to pay a certain sum at fixed days during the life of the annuitant, and when the latter dies, such day not having arrived, the former is discharged from his obligation.' (Lumley on Annuities, 291.) It resulted from the general rule that, if the annuitant died before, or even on the day of payment, his representatives could claim no portion of the annuity for the current year. We refer to some authorities on the general subject. (*Ex parte Smyth*, 1 Swans. 337, note; *Pearly* v. *Smith*, 3 Atk. 260; *Irving* v. *Rankine*, 13 Hun, 147; affirmed, 79 N. Y. 636; *Wiggin* v. *Swett*, 6 Met. 194; 3 Kent's Com. 470; Wms. on Exrs. 835; Hayes and Jarman on Wills, 172, note.) "

Neither of the exceptions referred to in *Kearney* v. *Cruikshank* (*supra*) existed in the case at bar and no necessity whatever was shown for extension of the rule beyond the cases mentioned in the opinion in that case. Carson was a bachelor. He was paid $10,000, and it was provided that he should receive an annuity of $3,000, payable in quarterly installments of $750 each, payable January first, April first, July first and October first in each year. While it was stated in the agreed submission that the annuity was to be paid during his life as provision for his support and maintenance, the contract itself contains no such provision. It does not appear that there was any necessity requiring the payment of the annuity for the support and maintenance of Carson. We think a fair interpretation of the contract and the intention of the parties

clearly shows that the defendant never intended to make any payments, except those specifically provided for in the agreement falling due as aforesaid. So far as we know, there has never been, under the common law, any extension by way of apportionment, except in the cases of minor children or a dependent wife living apart from her husband. The general rule is that where an annuity is payable on fixed dates during the life, and the annuitant dies before a date when a payment is due, the personal representative is not entitled to a proportionate part of the annuity. We know of no decision of the courts contrary to such rule. The case at bar falls within neither of the exceptions mentioned where an apportionment has been allowed.

In support of plaintiff's contention that the periodic payments under the contract in suit were intended for maintenance and support and that, therefore, there should be an apportionment, plaintiff relies largely upon the case of *Ex parte Rutledge* (Harp. Eq. [S. C.] 65). It appears from an examination of the facts in *Ex parte Rutledge* (*supra*) there was involved a trust to receive and apply certain dividends for the benefit of a husband and wife during their joint lives and of the survivor for life. The husband survived the wife and died shortly before a semi-annual dividend was declared. The executor of his will petitioned the court, alleging that the husband had no other maintenance than what was derived from said dividends, and that when he died he was heavily indebted to the executor, and that the executor, in making advancements to him, had relied on reimbursement from said dividends. The executor asked that so much of the dividends as had accrued up to the time of the husband's death should be paid to him. After referring to the exception to the rule in cases of provision for support, the court said (at p. 67) as follows: " The present claim is of that nature, it is expressly declared by the deed of Mrs. Cosslett, that the dividends on the stock settled, were intended as maintenance, and there is reason to believe that the advances made by the petitioner to his testator were on the credit of them. They were the only funds on which the testator depended for subsistence and they were daily accruing; for although payable only half yearly, yet they arose out of the daily profits of the bank, which might be ascertained at any intermediate time." However, the inapplicability of that case here is apparent from the fact that the contract at bar contained no express agreement that the payments were intended for maintenance and support. There is no evidence whatever as to the financial condition of Carson or as to any other sources of revenue which he might have. Unlike the *Rutledge* case, there was no evidence that Carson was indebted

to anybody at the time of his death, and there was an entire absence of any evidence that he required any part of the income for the purpose of his maintenance and support. Carson was a bachelor, and there is no evidence that there was any one dependent upon him. Certainly the defendant, who was an entire stranger to him, was under no legal duty to support or maintain him.

Plaintiff also relies on the case of *Clapp* v. *Astor* (2 Edw. Ch. 379) wherein the vice-chancellor discusses the question of apportionment of annuities, finally stating that: " An exception to the general rule has been introduced in the instance of annuities for maintenance of infants and of married women living separate from their husbands; and which, perhaps, may be extended to all cases where it is clearly intended for maintenance: *Hay* v. *Palmer*, 2 P. Wms. 501; *Howell* v. *Hanforth*, 2 Black. Rep. 1016." The vice-chancellor, however, continues as follows: " Apportionment in such cases is founded upon the necessity of maintenance so long as the party lives; but if not necessary, as where the annuity to a married woman is not for her separate maintenance, it shall not be apportioned at her death: *Anderson* v. *Dwyer*, 1 Sch. & Lef. 301."

As before stated, no necessity whatever is shown for the apportionment here sought, and there is not the slightest evidence that Carson depended upon the annuity payments for his maintenance and support. We are, therefore, unable to agree with the contention of plaintiff, assuming, as we believe we must, that the annuity is to be governed by the common law in force in South Carolina, that it is, nevertheless, apportionable as one for support and maintenance.

To recapitulate, it is our opinion that the contract in suit should be construed in accordance with the law of the State of South Carolina, where the contract was made and where its subject-matter was located, and that the law and statutes of New York have no application whatever to the interpretation of said contract. In the absence of proof of any statute or of the common law of the State of South Carolina, the common law of this State controls. Under the provisions of our common law there can be no apportionment of an annuity such as is provided for in the contract in suit. We, therefore, conclude that judgment should be granted in favor of defendant, with costs against the plaintiff.

DOWLING, P. J., FINCH, MARTIN and SHERMAN, JJ., concur.

Judgment directed in favor of defendant, with costs. Settle order on notice.