## FRANKLIN v. TWOGOOD.

1. **Practice**: PLEADING OVER. The filing of an answer, after an order overruling a demurrer to the petition, waives any exceptions to the ruling of the court on the demurrer.

2. **Pleadings**: ASSIGNMENT. In a petition filed for the foreclosure of a mortgage by an assignee thereof, the instrument containing the contract of assignment under which he claims is not irrelevant or immaterial; and a motion to strike the same from the petition upon that ground should be overruled.

3. **Promissory note**: ASSIGNMENT: EQUITIES. The assignee of a promissory note, under a transfer made in the body of a separate instrument, executed for an independent purpose, is not the holder of a *legal* title discharged of prior equities within the meaning of the law merchant.

> *Argu.* 1. —— ASSIGNMENT AND INDORSEMENT. An assignment of a promissory note is a transfer by writing of *an interest* therein; an indorsement is a transfer of *the title* by writing on the note, or when, by reason of prior successive assignments, it has become necessary on another paper annexed thereto.
>
> 2. —— TRANSFER OF LEGAL TITLE. By the law merchant, the only mode in which a negotiable note or bill could be transferred so as to invest the transferee with the legal title, or the right to enforce the remedies thereon in his own name, at law, was by indorsement.

3. —— BY ASSIGNMENT. The holder by an assignment, without indorsement, acquires only the rights of an assignee of a promissory note not negotiable.

4. —— ASSIGNEE OF A NOTE NOT NEGOTIABLE. The assignee of a note not negotiable takes the same subject to any equities existing against it at the time the debtor received notice of the assignment.

4. Estoppel: CORPORATION. The execution of a mortgage to a corporation is an admission of its corporate existence, and estops the mortgagor from denying the same.

*Appeal from Benton District Court.*

FRIDAY, JUNE 9.

THIS is an action to foreclose a mortgage made by the defendant to the Racine and Mississippi Railroad Company, on the 21st day of May, 1856, to secure the payment of a note of same date, also executed by the defendant to the same party or order, for the sum of two thousand dollars, payable five years from the 10th day of May, 1856, with ten per cent interest annually. The note and mortgage were executed in Winnebago county, State of Illinois, and made payable at Racine, in Wisconsin, and belong to that class of instruments known in the latter State as "farm mortgages."

At the date of the execution and delivery of the note and mortgage, which were given in consideration for twenty shares of stock in the Racine and Mississippi Railroad Company, the said company, by their agent, executed to the defendant an agreement, whereby, in consideration of the assignment by Twogood to the company of so much of the dividends on said stock which Twogood might become entitled to, as should be sufficient to pay the interest on said note, the said company agree not to demand said interest from him; and in case the company should negotiate this note and mortgage, they agreed to save Twogood harmless from the interest.

Franklin v. Twogood.

On the 24th day of July, 1856, the Racine and Mississippi Railroad Company issued a bond, No. 858, for two thousand dollars, payable to ——, or bearer, on the 10th day of May, 1861, with ten per cent interest per annum, payable semi-annually, and which bond also contained the following: "And for the better security of such payment being made to the holders hereof, the said company have assigned and transferred, and by these presents do assign and transfer, to the said holder of this bond, a certain note for the sum of two thousand dollars, executed by James D. Twogood of Winnebago county, together with a mortgage given as collateral to and for the purpose of securing the payment of the same, dated on the 21st day of May, 1856, payable five years from the 10th day of May, 1856, with interest at the rate of ten per cent per annum, which said note and mortgage are hereto appended, and are transferable in connection with this bond, and not otherwise, to any parties or purchasers whomsoever," &c. The company then authorizes the holder, in case of failure to pay the principal or interest of the bond, to foreclose the mortgage and take all other remedies against the mortgagor or company the holder may deem proper. The interest coupons are printed with the bond, and the note and mortgage are attached to it.

This bond was, shortly after its date, sold in New York to H. H. Goodman & Co., of whom the plaintiff purchased it in the summer of 1857, in good faith, paying therefor its face and interest. The company paid the interest up to November 10th, 1857, and no other part has been paid.

The cause was tried before a referee, who duly reported the facts and his conclusion thereon, that plaintiff was entitled to judgment for $3,409.41, and order of foreclosure, &c.; and the judgment was entered accordingly. The defendant, having made the necessary motions, and

Franklin v. Twogood.

properly served his exceptions to the rulings of the referee and the court, now appeals.

*I. M. Preston & Son* for the appellant.

*C. H. Conklin* and *John N. Rogers* for the appellee.

COLE, J. — I. The defendant demurred to the plaintiff's petition, which demurrer was overruled, and thereupon defendant filed his answer. The defendant now assigns the overruling of the demurrer as error. The filing of an answer was a waiver to any exception to the ruling on the demurrer, and such ruling cannot properly be assigned as error or made available as such in this court.

**1. PRAC-TICE: pleading over.**

II. The defendant moved to strike out of the plaintiff's petition the copy of the railroad bond containing the assignment of the note and mortgage sued on, as set out in the statement of this case, and also the interest coupons attached to it, on the ground that the same were irrelevant and immaterial. This motion was overruled, and such ruling is here assigned as error.

**2. PLEAD-INGS: assignment.**

There was no error in this action of the court. The railroad bond which contained the assignment of the note and mortgage was the instrument whereby the plaintiff acquired his title to them, and was not, therefore, either irrelevant or immaterial. *Manier* v. *Reynolds*, 4 G. Greene, 187 ; *Baker* v. *Chittucks*, 4 Id., 480.

III. The defendant set up in his answer that the note and mortgage were obtained from him by means of false representations and through the fraud of the railroad company by its agent, and set out particularly the alleged false and fraudulent representations and acts. On the trial before the referee, the defendant offered testimony in support of this defense.

**3. PROMIS-SORY NOTE: assignment: equities.**

The plaintiff objected to its introduction, on the ground that it was immaterial in this action, since it was not controverted by any testimony that the plaintiff became the purchaser and owner of the note and mortgage, before maturity, for a valuable consideration, without notice of the fraud, if any existed.

By agreement of the parties, the referee received the testimony, subject to the objections, which were to be considered and determined after all the evidence was closed, and when making up his final report. The testimony thus received tended to show that the defendant was induced to execute the note and mortgage by reason of the false and fraudulent representations made to him at the time by the agent of the railroad company. The referee sustained the objection, and excluded the testimony from his consideration in making up his report, and this is assigned as error.

The determination of this question rests upon the true construction of the law merchant. If by that law the transfer of this note and mortgage, which is made in the body of the railroad bond *a separate instrument, made for an independent purpose,* upon another paper, is an *indorsement* of the note, then the referee correctly ruled in excluding the evidence; but if such transfer was an *assignment only,* and did not, *by the law merchant,* of itself pass the *legal* title, then the evidence was material and competent, and should have been considered by the referee.

As applied to bills and notes, an *assignment* is the transfer, by writing, of an interest therein, while an *indorsement* is a transfer of the title by writing on the back thereof. The technical meaning of the word *indorse* (derived from the Latin words *in* and *dorsum,* the back), is to write on *the back* of a written paper; but it was held in *Rex* v. *Bigg,* by a majority of the court, as reported in 3 Peere Williams,

*Argu.* 1. assignment and indorsement.

419, 428, and by all the judges, as reported in 1 Strange, 18, that a writing upon *the face* was within the legal meaning of the word. And this construction was used approvingly in argument by Lord ELLENBOROUGH, in the case of *Yarborough* v. *Bank of England*, 16 East, 6, 12. See *Pilmer* v. *State Bank*, 16 Iowa, 321. But Mr. Parsons, in his work on Notes and Bills, says that the indorsement should always be written on the back, and if written on the face it would be a circumstance so unusual as that it would be regarded with suspicion and require explana-' tion. 2 Pars. on Notes and Bills, 17, 18.

There is, also, a still further extension of the meaning of this word, so far as pertains to its being upon the back of the note or bill itself, that has obtained a more extended approval in the adjudicated cases, if not by elementary writers, and which allows the indorsement to be made on another paper annexed thereto, when, by reason of so many successive indorsements, it becomes necessary. This paper is called, in the French law, *allonge*. Story on Prom. Notes, §§ 121, 151; Story on Bills of Ex., § 204; Chitty on Bills (9th Am., from 8th Lond. ed.), 251; 2 Pars. on Notes and Bills, 18; *Folger* v. *Chase*, 18 Pick., 63; *Patridge* v. *Davis*, 20 Verm., 499 (503); *Geary* v. *Physick*, 7 Dowl. & Ry., 653; *Merchants' Bank* v. *Spicer*, 6 Wend., 443.

In this case, the transfer is not within either of the extensions of the strict meaning of the word "indorse." It is not on the face of the note, nor is it anywhere claimed that there was any necessity for attaching a separate paper on account of prior indorsements, or for any other reason. The mode of transfer, it will be remembered, is not by an indorsement on a separate paper merely, but in a separate instrument, made between different parties, for another and distinct purpose, and which is an independent obligation of itself, having full force and validity without reference to the language used in it for the purpose of transferring the

note and mortgage sued on. The words of transfer were used therein for the purpose of better securing the payment of such independent obligation; and so far as appears, or so far as any claim is made, the manner of transfer was chosen by the parties, doubtless for the reason that it was according to their contract, and would best effectuate their agreement and intentions.

By the law merchant, the only mode in which a negotiable note or bill could be transferred, so as to invest the *Argu. 2.* — transferee with the legal title and right to enforce transfer of legal title. the remedies thereon, in his own name, at law, was by indorsement. Judge STORY, in his work on Promissory Notes, lays down this rule in the following language: "If a promissory note is originally payable to a person or his order, then it is properly transferable by indorsement. We say, properly transferable, because *in no other way* will the transfer convey the legal title to the holder, so that he can, at law, hold the other parties liable to him *ex directo*, whatever may be his remedy in equity. If there be an *Argu. 3.* — assignment thereof, without an indorsement, the by assignment. holder will thereby acquire the same right only as he would acquire upon an assignment of a note not negotiable." Story on Prom. Notes, § 120. Mr. Parsons lays down the same rule, as follows: "An indorsement may be said to operate both as an assignment and as a guaranty. But it differs from an assignment, in that an indorsee may bring the action in his own name, and an assignee cannot." 2 Pars. on Bills and Notes, 1. And again: "By the law merchant, bills and notes which are payable to order, can be fully and effectually transferred only by indorsement." Pars. Merc. Law, § 122. See, also, Story on Bills of Ex., § 201; Chitty on Bills (9 Am., from 8th Lond. ed.), 252, and the opinion of Chief Justice EYRE in *Gibson* v. *Minet*, 1 H. Bl., 605; *Younker* v. *Martin, ante.*

No particular or precise form of words is necessary to constitute an indorsement, so as to transfer the title to, and the right to enforce the remedies in the name of, the indorsee; but the rights of the indorsee, as well as the liabilities of the indorser, may, of course, be controlled by the language of the indorsement; for indorsements may be in blank or full, general or restrictive, qualified, conditional, or absolute.

If the language of assignment used in the railroad bond, for the purpose of transferring the note and mortgage, had been written and signed upon the note itself, or upon the note and a paper attached thereto, as part thereof, and necessary in order to write the indorsement, or, perhaps, if annexed and used for the purpose of writing the indorsement only, it would have been a good and sufficient indorsement of the note, and, by the law merchant, would have invested the indorsee with the complete legal title and right to enforce its collection.

It might, by a person unfamiliar with law, be not inaptly asked: If the language used will convey a perfect legal title and indefensible right, when written on one paper, why will it not do so when the same language is written on another paper? We answer, in *reason* it would; but, in the law, it does not. Not that the law is unreasonable, but for this: Originally, such a writing would not transfer a perfect legal title, if written anywhere; but the wants and experience of the commercial world demonstrate that advantages would result by conferring upon certain instruments this peculiar legal quality or characteristic, and, accordingly, it was so recognized, and thus became the law merchant. Now, no infraction of reason was committed nor injustice done, in that like special dignity was not conferred upon other instruments for which no such necessity had been demonstrated. Just as in the parable of the laborers who served only from the eleventh hour and received the same compensation as those who had borne

the heat and burden of the day, without any wrong or injustice to the latter, for that they had their own, and the master might, with justice and without wrong, give the others relatively greater compensation, since it was his own to give or withhold.

Without now determining whether the words of transfer in this bond, or other proper words of transfer written on a separate paper annexed to the note, in the absence of any *necessity* for it, would be an indorsement, we place our opinion upon the broader and safe ground that this transfer is made in the body of a separate instrument, made for an independent purpose, and to which the transfer is a mere incident, and which can, in no proper sense, be said to be a "part of the note." The transfer, as made, is a "courier with luggage," and not a clear, unincumbered, commercial paper. It is an *assignment*, and not an *indorsement*.

Since we find, then, that the transfer of the note in this case was an assignment, and not an indorsement, it only *Argu. 4. —* remains to inquire what rights were conferred *assignee of note not* upon the assignee thereby. Mr. Justice STORY *negotiable.* says, *supra*, that "the holder will acquire the same right only as he would acquire upon an assignment of a note not negotiable." And in such cases (aside from any statute), the assignee acquires the same rights in equity as the payee or assignor had; that is, he may, at law, sue the maker and prior parties in the name of the payee or assignor; or he may maintain a suit in equity in his own name against them. And as he stands in the place and upon the rights of the payee or assignor, he is subject to whatever defenses might be made as against such payee or assignor, provided they are such as the law considers equitable, and were subsisting at the time the debtor received notice of the assignment. Story on Prom. Notes, § 120, note 2; Story on Bills of Ex., §§ 199, 201, note 3; Edwards on Notes and Bills, 286, 251 and note; 2 Pars. on Bills and Notes,

45 and note *a*, and 46, note *c*, 47, and authorities cited.; *Younker* v. *Martin*, *ante*, and authorities cited.

These principles are so well recognized and so uniformly held, as to render the citation of the numerous cases in support of them wholly unnecessary.

Under our statute (§ 2757), every action must be prosecuted in the name of the real party in interest; and (§§ 1796, 949) all notes and instruments are assignable, and the assignee has a right of action in his own name, subject to any defense or set-off, legal or equitable, which the maker or debtor had against any assignor thereof, before notice of assignment.

In Wisconsin, where this note was payable, and in New York, where it was assigned, as well as in Minnesota, Ohio, California, Alabama, Arkansas, Florida, Indiana, Virginia, Maryland, Michigan, Mississippi, Missouri and Texas, and possibly other States, similar statutes are in force. See Digest of these in Parsons on Notes and Bills, 47, 48.

Without discussing the effect to be given to the *lex loci contractus*, or the *lex fori*, it is clear that whether the rights of the parties in this case are measured by the common law or the statutes of the *loci contractus* or *fori*, they are the same in legal effect.

Under the law, then, as applicable to the assignee of a note assigned upon a separate paper, and independent instrument made for another purpose as in this case, and not indorsed, the maker has the right to interpose any defense available, as against the payee, before notice of assignment, and, therefore, the referee erred in excluding the testimony which tended to establish such defense in this case.

IV. The appellants' counsel, in their printed argument, insist that there was no sufficient proof of the existence, in fact, of the corporation payees, the Racine and. Mississippi Railroad Company. And, also, that the cash payment, required by the charter, of five dollars

4. ESTOP-
PEL : cor-
poration.

upon each share subscribed, not having been paid by the defendant, but only secured by his note and mortgage, his subscription was void, as being a fraud upon cash subscribers. The execution of the note and mortgage was an admission of the existence of the payee (*Gordon & Washburn* v. *Janney & Co.*, Morris Rep., 182; *Barnard et al.* v. *Parvin*, Id., 309), and estopped the defendant from setting up the defense of fraud as claimed. *Clark* v. *Farrington*, 11 Wis., 306; *Blunt* v. *Walker et al.*, Id., 334; *Cornell* v. *Hichens*, Id., 353. But neither of these points are specifically assigned as error, and are, therefore, not entitled to even this brief and formal disposition.

For the reason that the referee excluded the evidence as stated under the third point in this opinion, the judgment of the District Court is

Reversed.