FRANKLIN v. TWOGOOD.

1. Contracts: LEX LOCI: COMMON LAW: ADJUDICATIONS OF OTHER STATES. The law of the place where a contract is made, will ordinarily govern in its construction, and the rights of the parties thereunder: but when a question arises under the common law, or law-merchant, the courts of this State will not be concluded as to what the common law rule in such case is, by what the courts of the State where the contract was made have decided in relation thereto. *Aliter,* if the decision was upon a question arising under some custom or usage of the place where the contract was made.

2. —— CONSTRUCTION GIVEN TO STATUTES AND CONSTITUTIONS. So, too, a construction given to the statutes or Constitution of a State, by its supreme judicial tribunal, will be followed by the federal

Franklin v. Twogood.

courts, and those of other States; but this rule does not apply to questions arising under the general or common law. Adjudications of other States upon these questions, though affecting contracts made therein, have no conclusive force, and are to be received only as lights or aids in assisting a correct determination, and have such weight only as their reasonableness and the character of the tribunals announcing them, entitle them to. The numerous authorities cited to support a contrary doctrine, examined by WRIGHT, J.

*Appeal from Benton District Court.*

THURSDAY, JULY 23.

PLAINTIFF declares upon a note and mortgage made by defendant, to the Racine and Mississippi Railroad company, in May, 1856. Answer, that the note was obtained by fraud, etc. Trial to the court, judgment for defendant, and plaintiff appeals. For further material facts, see opinion.

*C. H. Conklin*, for the appellant, in the course of a lengthy argument, cited the following authorities : Story on Con. of Laws, §§ 242, 260 *a*, 264, 265, 266 *a*, 267, 267 *a*, 268, 270 note 1, 272, 276 *a*, 277, 278, 279 *a*, 316 *b*, 637–639; *Western* v. *Genesee M. Ins. Co.* 12 N. Y. 258 ; *Curtis* v. *Leavitt*, 15 id. 90 ; *Bowen* v. *Newell*, 3 Kern. 290 ; affirming same case, in 2 Duer, 584 ; *Henderson* v. *Griffin*, 5 Pet. 150 ; *Carnigie* v. *Morrison*, 2 Metc. 381; *Holman* v. *King*, 7 id. 384 ; *Blanchard* v. *Russell*, 13 Mass. 14 ; *Van Cleef* v. *Therrasson*, 3 Pick. 12 ; *Powers* v. *Lynch*, 3 Mass. 77 ; 14 Verm. 157 ; 12 Wheat. 153 ; *Inge* v. *Murphy*, 10 Ala. 885 ; *Doughterty* v. *Sargent*, 15 Serg. & Rawle, 84 ; *Gilchrist* v. *Md. Ins. Co.* 2 Cranch, 874 ; *Lattimer* v. *Elgin*, 4 Dess. 26 ; *McRea* v. *Moulton*, 13 Pick. 53 ; 1 Johns. 580 ; 5 Conn. 202 ; 5 Mich. 513 ; *Hodges* v. *Shuler*, 24 Barb. 68 ; *Jones* v. *Fales*, 4 Mass. 245 ; *Thatcher* v. *Morris*, 1 Kernan, 437 ; *Dougherty* v. *Snyder*, 15 S. & R. 84 ; *Church* v. *Hubbard*, 2 Cranch, 274.

*I. M. Preston & Son*, for the appellee, cited the following: *Swift* v. *Tyson*, 16 Pet. 18; *Luke* v. *Lyde*, 2 Burr. 83; *Ames* v. *Smith*, 16 Pet. 315; *Walker* v. *Holman*, 16 id. 174; *The Bank* v. *Dunley*, 8 id. 380; *Mitchell* v. *Doggett*, 1 Cranch, 356; *McKissick* v. *McKissick*, 6 Humph. 75; *Pope* v. *Wendell*, 9 Cranch, 87; 2 Par. on Con. 81 (as to what constitutes law of place).

WRIGHT, J.—This case was before us in June, 1865, and will be found reported in 18 Iowa, 515.   Defendant there appealed from the judgment in plaintiff's favor, which followed the holding of the District Court, that plaintiff was a holder for value of paper indorsed and transferred before maturity, and as such, under the law merchant was protected against prior equities; for the effect of this construction of the transfer was to exclude all evidence of the alleged fraud.   We held, however, that the transfer made in the body of a separate instrument, executed for an independent purpose, did not have the effect claimed, and that defendant should be let into his defense.   On the second trial he was thus heard, succeeded in satisfying the court below of the fraud charged, and plaintiff now appeals.

The point principally, and, indeed, we may say almost entirely relied on, is the action of the court in striking out certain parts of the petition, and the exclusion of evidence to prove the same matters.

The only question is whether these allegations were pertinent or material, or whether the facts claimed, if proved, had a legitimate place in the disposition of the case.   As offered, the testimony was substantially this: That the note was negotiated at Racine, in the State of Wisconsin; that by the common law of said State, as then and subsequently adjudged and declared by the Supreme Court, the indorsement and transfer of said note and mortgage, in

*1. CONTRACTS: lex loci: common law: adjudications of other States.*

Franklin v. Twogood.

the manner shown, carried with it, as an incident, the said mortgage and all the rights and equities connected therewith; and the purchaser and holder thereof took the same free from all equities and defenses; that this was a legal and valid commercial indorsement, protecting the holder as fully and entirely as though the payee had indorsed the note on the back thereof, in the form usually required by the law merchant.

It will be observed that it is not claimed that the rule of commercial law, or law merchant, was changed by any statute of Wisconsin; nor did plaintiff propose to show that there was any local custom obtaining in Racine, and that the contract of indorsement was made with reference thereto. But the substance of the whole offer was to show that the Supreme Court of Wisconsin had given a different construction to these contracts from that given by us on the former appeal; that this, therefore, established the *lex loci*, and must govern.

We concede the rule, that the law of the place where a contract is made will ordinarily govern its interpretation and the rights of the parties thereunder, and that this applies to indorsements as to other contracts. But when it is a law common to all the States — or rather, when it is a question arising under the common law, or law merchant — which court is to determine and declare what the *lex loci* is? Is it competent to show by the decisions of the highest court where the contract was made that the law has been declared as plaintiff claims, and thus conclude the question in this State? If so, then the exposition of the law by the courts of a sister State — not of a statute, but of a law which obtains here and there alike — becomes not a light merely to us, but absolute authority, excluding all investigation and commanding our implicit obedience. Than this, few if any positions could be more dangerous or untenable.

To begin with, it begs the main part of the argument, and that is, that there was, on this subject, any *lex loci*. In what does it differ from the law of the forum? Is it made different by any statute — by any custom, local or general? Have we any statute in Iowa changing the rule? Have we any custom or local usage different from that which obtains in Wisconsin? It is conceded, and must be, that the rule of the common law is the same in both States. The only difficulty is, that the courts differ as to what that rule is. In determining what it is, we must avail ourselves of all the lights and information within our reach — looking to adjudications in Wisconsin and all the States alike — giving to all, the weight to which they are justly entitled. We do not determine it as a question of fact, but as one of general law. It is a misuse of terms to say the general law merchant is one thing in Wisconsin and another in Iowa. And equally so to say, that, because the courts of that State have given to this law a particular. construction, such construction becomes to, and makes for, parties the *lex loci*.

Now, the rule is, that a construction given to the statutes or Constitution of a State by its supreme judicial tribunal will be followed by the federal courts and those of other States. Not so, however, when we come to a question under the general or common law. Adjudications upon such subjects are aids or lights, entitled to just so much weight as their reasonableness entitles them to, but possessing nothing of the conclusive force of the former. And, even in the former, such constructions are followed, as a matter of comity or convenience to avoid confusion and conflict, and not as possessing the absolute verity or conclusiveness with which we invest the judgments and decrees of courts in sister States. In the latter, the very theory of our separate existences as States, our independence of each

2. —— construction given to statutes and Constitutions.

Franklin v. Twogood.

other in our judicial frame-work and polity, give to the decision of their courts the same inherent force. If one shall commend itself more to our reason and judgment than another, it is because of the greater learning and ability of those making it, and not because it has any more power or authority to speak or definitely settle for others the particular question. Adopt any other theory, and we shall soon cease to have a common law; the law merchant will be without uniformity; indeed, there will be no such thing. Contracts will depend for their interpretation all over the Union upon the particular views of the judges upon the bench in the State at the time they were made; in the same State there would be no necessary uniformity, unless, indeed, it might be that the exposition of the law as existing at the time of the contract, shall be accepted as entering into it, and to govern all subsequent judges; and all our well-established ideas of what is meant by the law of the forum and of the place of contract, would be set at defiance. The inquiry in such cases is, what is the law? not what are the facts? If we inquire what are the statutes of a sister State, we first settle a fact; find out what they are and give them a construction, unless this has already been done by their courts, and then, even, we give a construction by following theirs. In settling what the common law is, however, we have nothing to do with the fact or the words of the legislative power; but looking to decisions, text writers, and the sages of the law, we declare the rule, not as existing here, but in all the States, except as modified by statute. If this is not so, then the judges make the law — their rulings enter into and become a part of all contracts made in their States, while they remain undisturbed — and thus we would introduce a doctrine which we feel bound to say has neither reason nor precedent for its support.

The objection to the proposed proof is not placed upon the ground that evidence may not be received to show the unwritten law of another State or country. It is conceded that such evidence is proper.

But the point ruled is, that as to the common law or law merchant — where it has received no modification from custom or statute — we must declare it for ourselves, aided by such lights and precedents as we find in all the decisions and authorities bearing upon the question. · Nor do any of the cases cited by counsel teach any different doctrine. *Hodges* v. *Shuler*, 24 Barb. 68, so far as it touches this question refers to and relies upon *Jones* v.· *Fales*, 4 Mass. 245. This latter case holds, that, by the common law of Massachusetts, all cash notes are negotiable, and the form of declaring on such, was extended to those not negotiable. Or as it is expressed in the opinion : " The statute of 3 and 4 Anne, chapter 9, was never enacted in that State; but in practice the provisions of the first section were early adopted, and the form of declaring on negotiable notes resulting from that statute, was extended to notes not negotiable."

Or, again, " in this State it has been the immemorial usage for indorsees of notes not negotiable, to declare against the indorsers as on a negotiable note. The usage may be explained in a few words," etc. That the case before us does not fall within the rule thus stated, is but too manifest.

The other case principally relied upon is *Thatcher* v. *Morris*, 1 Kernan, 437. In substance, the point there decided is, that where a party seeks to enforce a contract in the courts of a State, which by its laws are forbidden and declared void, he must aver and prove where it was made, and that by the laws of that place it was authorized and valid. The case in its facts holds, beyond question, that prize money drawn by tickets owned by plaintiff in

Franklin v. Twogood.

a lottery authorized and established by the laws of another State, the tickets being sold and purchased in such State, might be collected in New York, though by their laws lotteries were prohibited.   To this doctrine there is no conceivable objection; and yet it falls far short of the question before us.   For whether these lotteries were permitted or authorized by statute, or by the common law of the State, the case would have no analogy to one where there was no statute, nor any common law peculiar to . the State whose decisions are relied upon as controlling the tenor, interpretation and nature of the contract.   The latter case is the one before us.

Other questions are made, minor in their nature, merely referred to, and evidently not deemed of controlling importance.   The substance of the case is found in the point above ruled, and the judgment below must stand

Affirmed.

Since the announcement of the foregoing opinion, appellant's counsel, in an argument showing abundant research and ability, has asked a rehearing of the point ruled.   In view of the importance of the case to the parties, as also the fact that the question was a new one in this State, the request was granted, and counsel have again presented it for our determination.   We have thus been induced to give to the case the most attentive consideration — having the benefit of an argument much more elaborate than on the first hearing — and after all are brought to the conclusion that this judgment should not be disturbed.

From the statement of the case, found in the foregoing opinion, it will appear that much of appellant's argument relates to a point which is there conceded, certainly not denied.   And the same is true as to the bearing of many of his authorities.

We have not intended to hold that the local. laws of a sister State, that the common law as peculiar to another State, may not be shown by the production of the reports or adjudicated cases in such States, as well as by parol proof.

And, indeed, we are ready to agree with GOLDTHWAITE, J., in *Inge* v. *Murphy* (10 Ala. 885), and upon which counsel relies with more confidence, perhaps, than any other case cited, that, "for accuracy of information such reports seem equal, at least, to the testimony of witnesses, which, however respectable the individuals may be, must chiefly, if not entirely, be founded on information derived from the same sources." And the case of *Latimer* v. *Elgin* (4 Dess. 26), proves nothing more. Nor have we pretended to hold, that the unwritten law of another jurisdiction may not be proved by the testimony of witnesses as well as by public history and decided cases.; and to this extent only are many of the cases cited in appellant's argument. Among others see *McRea* v. *Moulton*, 13 Pick. 53 ; *Gilchrist* v. *Md. Ins. Co.* 2 Cranch, 874; *Dougherty* v. *Snyder*, 15 S. & R. 84 ; *Raynham* v. *Canton*, 3 Pick. 293; *Holman* v. *King*, 7 Metc. 384; *Church* v. *Hubbard*, 2 Cranch, 274.

The question made goes back of all this, and, as applied to the purpose for which the testimony was offered, presents this inquiry : Whether plaintiff proposed to prove a fact, or whether he had any more right to introduce the Reports of Wisconsin than he had those of New York, Illinois or any other State? It is competent to plead and prove the statutes of another State as a fact. So it is equally competent to prove by parol the unwritten law of another sovereignty. But can you prove by the decisions of another State that its courts have given a particular construction to the commercial law — not as existing in that State alone, but every where, generally,

Franklin v. Twogood.

and hence conclude all other courts, when they come to pass upon similar contracts, though made in the State where such decisions are announced? If so, what do the decisions prove? That, in the case before us, the law so declared is the law of Wisconsin? That any different rule obtains there, by custom or otherwise, than obtains and is declared by the law merchant? Or rather, that their courts have given a particular construction to a law which is the same there as here? That the latter is the true statement of the proposition is abundantly shown from the decisions themselves.

Thus, in *Crosby* v. *Roub et al.* (16 Wis. 616), one of the cases offered in evidence, it is said (p. 624), "It is claimed that this note never was transferred to the plaintiff within the rule of the mercantile law, so as to transfer the legal title, and, that, therefore, the equities between the original parties may still be shown in defense." And again, "The sole question is, whether this was a sufficient indorsement of the note *within the law merchant*, to pass the legal title." See also the head note, where, after stating the facts, in all respects as they exist in this case, then follows: *Held*, "that this was a sufficient indorsement *within the law merchant* to pass to plaintiff the *legal title* to the note." Than this language, could anything more clearly show that the courts in Wisconsin give one construction to the law merchant, as applied to the same facts — this court another? If the decisions in that State are *evidence*, so, upon the same principle, would those of this court be.

The other two cases offered in evidence (*Croft* v. *Brewster*, 9 Wis. 503; *Stilwell* v. *Kellogg*, 14 id. 461), decide nothing, except it may be most remotely, bearing upon the point raised in 16 Wis., just referred to, and ruled by us in 18 Iowa, 515. They acknowledge some general principles which we do not controvert. In neither

of them did the party seek to recover upon a "farm mortgage." And now when we remark that the case before us was commenced in 1861; that the note upon which plaintiff seeks to recover was dated May 21, 1856; that the first of the cases thus offered in evidence was decided in 1859, and the last and important one in 1863, — we say when these facts are remembered, the absurdity of claiming that these decisions would be evidence that the parties contracted with reference to any custom or law peculiar to that State, or in view of any modifications which the common law had received there from the decisions of their courts, is most apparent.

And here we might, and perhaps should, stop. But what, we ask, is the law merchant? It is defined to be " a system of customs acknowledged and taken notice of by all commercial nations, and those customs constitute a part of the general law of the land, and being a part of that law, their existence cannot be proved by witnesses, but the judges are bound to take notice of them *ex officio* " (Bouvier); and in consonance with this definition is the language of SHAW, Ch. J., in *Carnegie* v. *Morrison* (2 Metc. 395) (and upon which case, by the way, appellant relies), " that some of the rules applicable to the construction and effect of contracts, are founded in positive law, established *by usage* or by statute, which each country will establish for itself, according to its own views of convenience and policy, and have a local operation; while others are derived from those great and unchangeable principles of duty and obligation which are every where recognized among mercantile communities, and indeed among all civilized nations, as lying at the foundation of civil contracts, and must be considered as having the same effect, wherever, by the comity of nations, contracts made in one country are allowed to be carried into effect by the laws of another."

Franklin v. Twogood.

Now, we will not say what rules, according to its own views of convenience and policy, a State may or may not adopt as to the construction or effect of contracts made within its limits; but we do say, that, where we are considering a custom which constitutes a part of the general law of the land, it must have the same effect, whether the court determining it is in one jurisdiction or the other. In other words, if the decision of a sister State is founded not upon any local statute or usage, but upon the general principles of commercial law, the doctrine announced is in no manner binding, if it differs from what in our opinion are the true principles of such law. The true interpretation and effect of contracts and instruments of a commercial nature, are sought for, not in the decisions of local tribunals, but in the general doctrines of commercial jurisprudence. Undoubtedly, the decisions of the local tribunals upon such subjects are entitled to and will receive the most deliberate attention and respect; * * but they cannot furnish positive rules or conclusive authority, by which our own judgments are to be bound up and governed.

The law respecting negotiable instruments may be truly declared in the language of Cicero, adopted by Lord MANS-FIELD in *Luke* v. *Lyde* (2 Barr. 883), " to be in a great measure, not the law of a single country, but of the comercial world." *Swift* v. *Tyson*, 16 Pet. 18, 19. In other words, the *positive* law of another State, whether founded on statute or usuage, it is our duty ordinarily to follow in the interpretation there made. But when we come to a question arising under the general law merchant, it is a misuse of terms to speak of a *lex loci*. The law of the forum and of the place of contract is and must be the same in the case last supposed, else it is idle to talk about the " general doctrines of commercial jurisprudence."

And, after the most patient examination of most of the

many cases cited by counsel, we are compelled to repeat what we said in the former opinion, "that they do not teach any different doctrine." Thus, in *Bowen* v. *Newell* (3 Kern. 290), the question turned largely upon the *usage of commercial banks*, relating to days of grace. The usage in that case became the law of the State. It was *for the State* its *positive* law. If the object in this case was to prove usage, a rule peculiar to Wisconsin, the case might be applicable. So in *Curtis* v. *Leavitt* (15 N. Y. 89, 90) the common law of New York held, that to constitute a seal, required the impression to be made upon wax or some tenacious substance; while that of England held it such if simply made upon paper. But the question was not, what was the *common law rule?* but what was the *common law, the usage, the custom of a State?* If the first had been the inquiry, would the English decisions have been receivable as *evidence?*

In *Carnegie* v. *Morrison* (2 Metc. 381) before cited, the contract in suit was held to be governed by the law of Massachusetts, and the opinions of English barristers had, therefore, no place in the case.

And yet there, again, there was no effort to show what the common law rule was — the rule of the commercial law — but that the decisions in England had established a rule, in view of their practice and system of pleading, different from what obtained in the commonwealth where the contract was made, and by whose laws it was to be governed. Then, again, there was no objection made to the testimony, and it was at least doubtful, after all, whether the rule was not the same in both countries.

*Holman* v. *King* (7 Met. 384) is in no respect analogous. There the question was, what was the statute of Georgia on a particular subject. The method of proof was not controverted. What construction had been given to the statute by the courts in Georgia was left as a ques-

tion of fact to the jury. Conceding the correctness of this last proposition, it does not affect the case at bar.

In *Powers* v. *Lynch* (3 Mass. 76), the bill was made and indorsed in the colony of Demarara, where there were but few English laws — the basis of its jurisprudence being the Roman Dutch — and it was held, that the indorser was to be held by the laws of that country. If the law had been the same in that colony and Massachusetts, there being a mere difference of opinion as to its meaning, it would have been unnecessary to inquire what it was there.

The somewhat celebrated case of *Blanchard* v. *Russell* (13 Mass. 1) only holds, where the contract sued on was made in the State which enacted the bankrupt law, of which the debtor was then a subject, that a discharge thereunder is a bar to an action by the creditor in another State; and, while the opinion is one of the ablest of the then chief justice (PARKER), it decides nothing in conflict with the position taken by us in this.

In *Vancleef* v. *Therasson* (3 Pick. 12) the rule referred to had been established in New York, where the contract was made, by a series of decisions. Indeed, the reporter (note 3, p. 14) seems to regard it as the true doctrine of the common law; and that it is not is no where intimated in the opinion.

*Henderson* v. *Griffin* (5 Pet. 150) follows *Jackson* v. *Chew* (12 Wheat. 153) to the effect that the view of a State court upon a rule of the common law becomes, as a rule of property, entitled to the same respect as those given in the construction of a local statute. But the reason of this is plain enough, when we consider the nature of the two jurisdictions, and the necessity for it, upon which we have no time to enter. Whether the rule has been adhered to in all subsequent cases, in that court, may at least admit of doubt.

Franklin v. Twogood.

What has been before said of *Inge* v. *Murphy* (10 Ala., 885), and of the preceding cases, is sufficient to show its inapplicability. In North Carolina, where the deed of gift in that case was made, the rule of the common law — that no remainder in chattels, after the determination of a life estate, was permitted — continued in force. It had been altered in England, and generally in the United States, including Alabama. In holding that it was competent to show the law of North Carolina, there was no semblance of error. Indeed, we have nowhere denied the correctness of that rule. When we further suggest what is shown in the statement above, that the common law rule was almost if not entirely local to the State where the deed was made, the inapplicability of the case becomes most apparent.

And thus we have with some care and particularity referred to the cases upon which appellant relies. We do not believe they militate in the least against the doctrine of the former opinion. Confirmed by our subsequent inquiries in the correctness of the former order, it is directed that the judgment of affirmance remain undisturbed.