Crosby vs. Roub et al.

---

## CROSBY VS. ROUB, and others.

Where a promissory note and a mortgage securing its payment were executed to a railroad company, and it executed to C its negotiable bond for a sum equal to the note, attaching thereto the note and mortgage, and reciting in the bond that the company transferred the note and mortgage to C as security, and that both should be transferrable in connection with the bond and not otherwise. *Held*, 1. That this was a sufficient endorsement within the law merchant to pass to C the legal title to the note.

2. That C being a purchaser for value, took the note free from all equities or defenses existing against it in the hands of the railroad company, of which he had no actual notice.

The payee or owner of a promissory note, may by the law merchant, transfer the legal title thereto without assuming any liability on account thereof as indorser or guarantor, and when a note is transferred by a guaranty, whether the guaranty be good or not against the party making it under the statute of frauds, the legal title to the note passes.

An indorsement or transfer of a promissory note may be on another paper attached to and made a part of the note, called an *allonge*, and it is not essential to a

transfer of a note by this method that there should have been a physical impossibility of writing the indorsement or transfer on the note itself, but it may be on another paper attached to the note, whenever necessity or the convenience of the parties requires it.

APPEAL from the Circuit Court for *Rock* County.

In the court below the plaintiff had judgment of foreclosure and sale as prayed for, and the defendants appealed. The case is stated in the opinion of the court.

*J. A. Sleeper*, for appellants :

The evidence introduced by the plaintiff did not show him to be an indorsee of the note. It only showed that he was assignee of the note and mortgage, by virtue of an assignment, and had the title thereto.. But the assignment contained in that bond did not constitute an indorsement, and neither àt the common law nor by the custom of merchants, would it have enabled the plaintiff to bring suit upon the note in his own name. Bills, notes, &c., may be assigned by deed, but such transfer will not entitle the holder to sue in his own name. *Hopkirk vs. Page*, 2 Brock., 20 ; *Chaflant et al. vs. Rush et al.*, 2 Minn., 107. A promissory note can be transferred by mere delivery, so as to pass the title and right to sue in the name of the holder under our statute requiring the action to be brought in the name of the real party in interest, but when a note is payable to order, and is found in the hands of a person not the payee, without indorsement, the difference between such a holder and one who holds by an endorsement is, that the former is not entitled to the privileges of a *bona fide* holder, while the latter is. 2 Minn., 107. A note payable to order passed without indorsement, is not taken in the regular course of business, and is subject to the same disabilities as if it had been taken after due, but the title passes sufficient to maintain an action upon it under our statute, in the name of the owner. In whoever the substantial ownership and property rests, there the right of action is. 1 H. Bl., 605 ; *Cunliffe et al. vs. Whitehead*, 32 Eng. C. L., 343 ; Story on Bills, §§ 199, 201, page 238, note 2 and

3; Story on Prom. Notes, § 120, notes 2 and 3; R. S. 1849, chap. 44, secs. 1, 3.

It may be contended, that inasmuch as this bond of the company and the note and mortgage were attached together at the time they were delivered to the plaintiff, it constitutes an indorsement, that it is what the French law denominates an *allonge.* Now an indorsement of a bill or note, by the custom of merchants, originally was required to be in writing, and on the note or bill itself—literally on the back. EYRE, Chief Baron, in *Gillson et. al. vs. Minet et. al.*, 1 H. Bl., at page 625–6, says: "It is by force of the custom of merchants that a bill of exchange is assignable at all. Of necessity the custom must direct how it shall be assigned; and in respect of bills payable *to order*, the custom has directed that the assignment should be made by a writing on the bill, called an indorsement, appointing the contents of the bill to be paid to some third person." This is the language of all the authorities, and is an elementary principle. It is said by some writers and in some authorities, that every indorsement imports a bill of exchange, whether it be in full or in blank, for if in blank, any holder is authorized to write over the name a special indorsement, directing the contents to be paid to himself or any particular person. Story on Prom. Notes, § 129.

As a drawer of a bill of exchange, contracts with the payee and every holder or indorsee, that the drawee will accept the bill and pay it according to its terms, to whoever shall be the holder, and in default, that he himself will pay it; so does an indorser promise every subsequent indorsee that the drawee or acceptor will pay; that if the drawee does not, the drawer and every prior indorser will, or if they fail, that he will pay himself. An indorsement is a contract of a two fold character; it transfers the title to the bill or note, and to all indorsements thereon, and creates a liability on the part of him who makes it, to pay the contents to the holder in default of the prior parties thereto. This contract is made and becomes

effectual for both purposes, by the mere writing his name on the note or bill. But there is another characteristic of this contract, which makes it different from an assignment containing words of guaranty. In order to continue the liability to pay, the indorser must have due and timely notice of the default of the prior parties to the bill or note, at least of the maker of a note, and of the acceptor of a bill. Story on Prom. Notes, § 135. Any act which does not pass the legal title to the whole bill or note, and contain an order to pay the contents to the holder, or some particular person, or authorize such an order to be written over it and at the same time contain a promise to pay the contents to the holder in case of default of the maker of the note, or acceptor or drawer of the bill, where the bill has not been accepted, is not an indorsement within or according to the custom of merchants. I concede that an indorser may by indorsement transfer the bill or note "*without recourse,*" and then he is not liable. But what I mean is, that the act must be sufficient in the absence of any such restrictive words, to transfer the title and create the liability, without there being an express undertaking to pay in the nature of a guaranty, as contra-distinguished from an indorsement. Chitty on Bills, 235. *Douglass vs. Wilkeson,* 6 Wend. 637.

Again, where the act by which a note is transferred is equivocal, i. e., when it is not in the usual form of an indorsement, we may, I doubt not, look at the transaction to see what the transferrer intended by the act; whether he intended it as an indorsement according to the custom of merchants, or whether it was intended only as an assignment, which does not amount to an indorsement. One of the tests by which we may determine the intent will be, does the act amount to drawing a new bill of exchange? Does it, without express words, create a personal liability to pay the contents to the holder as an indorsement in blank does, there being no words of express promise to do so? Does it so pass the title as to enable a holder to maintain an action upon it in his own name? In the

case of *Hopkirk vs. Page*, 2 Brock., and *Chaflant et. al. vs. Rush et. al.*, 2 Minn. 107, such a distinction is taken by the courts; and EYRE, J., in 1 H. Black, 606 says: "We shall all agree that if a man claims to be entitled to a bill of exchange drawn payable to a real payee, *or order*, and has not an indorsement by the payee, he cannot count upon it as upon a bill of exchange, *though he should have paid to that payee the full value of it, and though it were bargained, sold, assigned and conveyed to him by every form of conveyance which courts of law and equity in this country have recognized.*" Story on Prom. Notes, § 120 ; Story on Bills, § 201 ; Chitty on Bills, 228.

Applying these rules to the transfer of this note, it does not constitute an indorsement or transfer within the custom of merchants.   1. It is not written upon the note itself, and its being attached to it and the mortgage, does not change its character.   Unless it clearly appears that it was intended as an indorsement, an *allonge*, in contradistinction to an assignment not constituting an indorsement; unless it clearly appears to have been intended to be the same as if the name of the payee were written upon the note; it is a *conveyance*, not an *indorsement.*   2. It does not appear from the instrument that it was intended as an indorsement.   It contains no order or direction to the maker to pay. the contents to any particular person, nor is it in such form that any holder is authorized to write over the signature a special indorsement, ordering or appointing the payment of the contents to any particular person. No one is authorized to insert anything in the body of that bond.   Had any holder written in that bond the words, "Pay *Daniel P. Crosby* or order the contents of the annexed note," it would have been a material alteration ; it would have been a forgery, and rendered the bond void.   3. Without the acknowledgment of indebtedness or promise to pay contained in that bond, no liability on the part of the company to pay the money secured by the bond and mortgage would be created. That part constituting the assignment, certainly creates no per-

Crosby vs. Roub et al.

sonal liability.  It only effectuates an assignment of the note and mortgage.  4. The bond of the company is the primary security for the money advanced by the plaintiff.  The note and mortgage are transferred *"for the better security"* of payment being made by the company to the holder of the bond. It is true that by the terms of the transfer, the note and mortgage, are only transferable in connection with the bond; but by the terms of the transfer, the holder is only authorized and empowered to proceed upon the note and mortgage, in case of failure of the company to meet its payments of principal and interest, according to the terms of the bond.  If the company had performed all its stipulations, no action could be maintained against the defendants upon the note and mortgage, or either of them.  The failure of the company to pay, is what gives the holder of the bond any claim to the interest now due upon that note and mortgage.  Had the company paid the interest on the bond, it, not the plaintiff, would be entitled to this interest, so far as appears on the face of the note and mortgage.  If this were an indorsement, upon a default of *Roub*, the plaintiff could bring suit at once without asking the company.  5. It is not even a guaranty of the payment or collection of the money mentioned in the note or mortgage.  The transaction is the creation of an indebtedness of thirty-five hundred dollars, with interest semi-annually, by the company, and a promise to pay the same to the bearer, and a conveyance of the note and mortgage to secure its prompt performance of its obligation.  It is not the company that is surety for the defendant, but the defendant who is surety for the company.  6. It is clearly evident that it was not the intention of the company to indorse the note, or to make itself liable as indorser; and as there are no restrictive words, if the company is indorser of that note, it is *liable* as indorser.  But no such liability can by any possibility be drawn or implied from the act.  The company has fixed the character in which alone it has contracted, and that is, as original promissor, and not as collateral to the

note and mortgage, not as a surety thereon or therefor.   7. The language in the attestation, that the corporate seal is affixed, and the bond signed by the president, and countersigned by the secretary, *by order of the board of directors*, is a declaration of the power and authority conferred upon those officers, to-wit: to make and execute that bond and the assignment of the note and mortgage as collateral security to the bond of the company, upon the terms and conditions and limitations there-in contained, and excludes all idea or implication that they were authorized to *indorse* the note, or bind the company as indorser. 8. This note is payable to a corporation, *or order*.   The holder must have the indorsement of the payee before he can be said to be the indorsee thereof within the custom of merchants. Such indorsement could only be made in pursuance of a pow-er conferred by the board of directors upon some officer or agent of the corporation.   The power conferred is stated in the bond itself, and that is not a power to indorse the note.   9. It is not an *allonge*.   Chitty says:   " There is no legal limit to the *number* of indorsements; and if there be more than can be distinctly written on the back of the bill itself, a paper may be annexed, called in France an *allonge*, on which the latter in-dorsements may be written. *and which is considered part of the bill itself, and requires no additional stamp.*"   Chitty on Bills, 235–6.   *Folger vs. Chase*, 18 Pick. 63; Story on Prom. Notes, § 121, id., 172 § 151; Story on Bills, §§ 204, 218.

Now, how can the fact that this bond is annexed to the mortgage and note, make it a part thereof?   It makes it a part of the mortgage just as much as the note.   The truth is, it made it a part of neither; and yet the essential and indispen-sable characteristic of an *allonge* is, that by the *intentional* act of the party annexing it, it is a part of the bill or note.   It is annexed to *lengthen* out the bill or note, so that indorsements, which cannot be made on it, because it is already covered to such an extent that an indorsement cannot be written distinct-ly thereon, may be made of the bill or note, by being written

on the *allonge.* It is allowed and recognized by the custom of merchants, *ex necessitate rei;* but it does not require nor even permit that such an instrument as this bond shall be tortured into an *allonge,* and be considered to be a part of the bill or note, or construed into an indorsement, when the bill or note has no indorsement or writing upon it. The indorsements written on the *allonge* are to be such as would be written on the bill, were there room, and not otherwise. Again, were this bond executed now, and annexed to the note and mortgage, and all delivered together, can any one doubt that it would require an additional stamp to that required by the note and mortgage? Does any one doubt that it would be void either as a transfer of the note or as an agreement or undertaking or promise to pay money, under the act of congress, for want of a proper stamp? Does any one suppose that it could, by the most latitudinarian construction, be deemed to be a part of the note, and not a separate, independent instrument, not an original, primary promise of the company to pay the money therein mentioned?

*Conger & Hawes,* for respondent, cited Edwards on Bills, 69, 267; Story on Prom. Notes, §§ 121, 21; *Folger vs. Chase,* 18 Pick. 63; *Brown vs. Butchers' & Drovers' Bank,* 6 Hill 443; *Merchants' Bank vs. Spicer,* 6 Wend., 443; *Partridge vs. Davis,* 20 Vt., 499; *Morris Canal & Banking Co. vs. Fisher,* 3 Am. Law Reg., 423; R. S. ch. 122, § 13; *Clark vs. Farrington,* 11 Wis., 306.

*By the Court,* PAINE, J. This action was brought to foreclose what is commonly called a farm mortgage. It was given to the Milwaukee & Mississippi Railroad Company, and the note given in connection with it was made payable to that company or order. It is conceded that it was transferred to the plaintiff before due, for value, and that the plaintiff had no notice of any equitable defense. But on the trial, the defendant offered in evidence, a defense set up in the answer, founded

upon alleged false and fraudulent representations by the agents of the company in procuring the mortgage. This was excluded, on the ground that such facts would constitute no defense against the plaintiff, he being a *bona fide* holder for value.

This ruling is alleged to be erroneous. And it is claimed that this note never was transferred to the plaintiff, within the rule of mercantile law, so as to transfer the legal title, and that therefore the equities between the original parties may still be shown in defense. This position is based entirely upon the mode of transfer, which was as follows: The* company executed to the plaintiff its own negotiable bond, payable to him or bearer, and attached the note to it, reciting in the bond that they thereby transferred the note and mortgage to the plaintiff as security, and that both should be transferrable in connection with the bond, and not otherwise.

The sole question is, whether this was a sufficient endorsement of the note within the law merchant, to pass the legal title.

It must be admitted that the company did not assume the liability of endorsers. But this is clearly not necessary to transfer the note. Thus, a payee may endorse without recourse, which transfers the note, though he assumes no liability whatever. So he may transfer the title, by signing on the back or attached to the note, a guaranty of the payment or collection, which is an entirely a different contract from that of an indorser. And even though he shall fail to bind himself as guarantor, by not complying with the statute of frauds, there is no room for doubt that the title to the note would pass. In every case of a sale of negotiable paper, there are two objects to be accomplished: first, to pass the title to the purchaser; and second, to fix the relation of the vendor to the paper after the sale. The latter may release him from any liability, or charge him with the ordinary liability of indorser, or with the unconditional liability of a guarantor of collection. But it is immaterial which, so far as the accomplishment of the first object is

concerned.   In either case, the name of the payee on the paper, with the intent to pass the title, has that effect, whatever may be the nature or fate of the balance of the contract.   Judge BRONSON, in *Miller vs. Gaston*, 2 Hill, 192, states the fact incidentally, that " a guaranty, as well as an indorsement, may have the effect of transferring the legal title to the note." There are but few authorities directly in point, and those are somewhat in conflict.   They are all mentioned in  Parsons on Notes and Bills, vol. 2, p. 135, note a.   The author gives it as his opinion, that on principle, a note transferred  by guaranty remains negotiable ; and those cases which sustain that conclusion seem founded upon the better reasoning.   If an  indorsement without recourse transfers the title, because the parties so intended, an indorsement with guaranty should have the same effect, and that whether the guaranty, as such, stand or fall.

It being established, then, that it is not necessary to a transfer of title, that the vendor should assume the technical liability of indorser, but that the parties may contract on that subject as they please, can there be any room for doubt, that if the bond of the railroad company had been actually written on the back of the note, it would have been a sufficient indorsement to transfer the title, within the law merchant ?   I can see none whatever.   Stronger language could not be used, showing an intent to pass the title to the note, to be held as collateral security for the bond, and that it was designed to circulate as negotiable paper, transferrable by delivery with the bond, which the company must be assumed to have known could not have been done without being first indorsed by it. The intent, then, to pass the title and make the  note transferrable by delivery afterwards, as a note payable to order and duly indorsed by the payee, is beyond question.   And this contract, like all others, must take effect according to the intent of the parties, if it is sufficient in law to express that intent.   And the fact that the parties contracted for an absolute liability by the vendor, evidenced by a distinct negotiable

instrument on the back of the one transferred, cannot, upon any rational principle, be held to distinguish the case so far as the mere question of a transfer is concerned, from a case where they contract for no liability, or for the conditional liability of an indorser, or the absolute liability, of a guarantor. I conclude, then, that if the bond had been written on the back of the note, it would have been fully sufficient to pass the legal title within the law merchant.

The only question remaining is, whether the fact that it was on another paper attached to the note, prevents this effect. This must depend upon the question whether there is any inflexible rule of the mercantile law, requiring the indorsement to be on the identical paper on which the note was originally written. That there is any such, certainly cannot be maintained. All the cases whe e the question is raised, and all elementary writers, concur in saying that an indorsement may be on another paper attached to and made a part of the note. Such paper is called an *allonge*. And it is true that the usual reason stated for using such a paper, is that there is no longer room on the note to make the indorsement. But this does not mean that there must be an actual physical impossibility to write the indorsers name on the original paper. On the contrary, the usage of the mercantile law is, as chief justice MARSHALL says, "founded in convenience." And all that its spirit or its letter requires is, that when it is inconvenient to write on the back of the note the real contract between the vendor and the vendee, a d which if so written would pass the title, it may be written on another paper and attached to it with like effect. Thus, suppose the consideration for the ordinary indorsement was a sale of real estate, and the parties desired to express the consideration. It might be wholly unnecessary, yet no one could question their right to do so. Suppose the description of the real estate was too long to be written on the back of the note, and they should write the indorsement on an other paper containing the full description,

and attach it to the note, could it be for a moment contended that it would not pass the title? I think not. Yet if not, it must be because the spirit of the mercantile rule is as above stated. And if such is its spirit, the particular reason which makes the contract too long to be written on the note is wholly immaterial. All that can be material is, that it would be a contract which, if on the note would pass the title, and that for some reason it is inconvenient to write it on the note. When this is true, the transfer may be effected by writing it on another paper attached to the note.

All that is shown by the authorities relied on by the appellant is, that where a note payable to order has never been indorsed by the payee, within the meaning of the law merchant, the legal title has not passed, and the equities between the original parties are not cut off. But no case was cited, and I think none can be found, to show that the name of the payee on another paper attached to the note and plainly intended to operate as an indorsement so far as to transfer the title, would not have that effect.

There are cases showing that an assignment of a number of notes at once, by a separate paper never attached to either of the notes or intended to be, is not an indorsement in the law merchant. *French vs. Turner*, 15 Ind., 59 ; *Hopkirk vs. Page*, 2 Brockenbrough, 41. But such a transfer is so widely different from the present, and there was really so little ground to claim it was an indorsement, that while the correctness of those decisions is unquestioned, it is equally clear that they are not applicable here. On the contrary, Chief Justice MARSHALL based his conclusion upon the fact that the mode of transfer there in question, separated the " evidence of ownership from the bill itself ;" implying plainly, that the same conclusion would not be true where this evidence was attached to the note so far as to travel with it wherever it might go.

I have not deemed it necessary to enter into any detailed

examination of authorities.    I have stated the principles which seem fairly to be derived from them; and although no case is found where a contract precisely like this has been passed on, it seems to me fully within those principles.    The rules of the mercantile law are based upon convenience.    For this very reason they do not harden, so as to impose upon one age the mere shapes and forms of business which may have been in vogue in another.    This would be extremely inconvenient. Those rules are therefore flexible, and adapt themselves to the changes of progress and experience, so as to be always founded on convenience.    No better illustration of this can be given, than is furnished by the history of negotiable bonds like the one in connection with which this note was transferred.    Bonds and other sealed instruments were not negotiable within the law merchant.    They were always open to any defense existing between the original parties.    But in the great increase of corporations, who became borrowers in the money markets of the world, it was found that their bonds were performing the same functions as negotiable paper, and that the interest and convenience of the mercantile public required that they be governed substantially by the same rule.    This rule has accordingly been established.    See opinion of Justice COLE, in *Clark vs. Janesville*, 10 Wis., 188, and cases cited.    It would be an extraordinary departure from the spirit of those decisions which held that these bonds, though in form not within the law merchant, were yet within its reason and should be entitled to its protection, if we should now hold that by connecting one of them with a note which was negotiable within the law merchant, the latter should be taken out of it.

I think the judgment should be affirmed.