BISHOP et al., Appellants, v. CHASE et al.

### Division Two, May 8, 1900.

1. Note: PAYMENT BEFORE MATURITY: TRANSFER BY ATTACHED PAPER. The transfer of a negotiable note before maturity for value, by pinning to the note a written paper on which is set forth a qualified indorsement (that is, that it is transferred as collateral security for the payment of the other note to which it is pinned), is not a sufficient indorsement of the note to invest its transferee with all the rights of a *bona fide* purchaser. Such an indorsement is not the same as an indorsement written on the back of the note itself, but is a mere assignment, and the note in the hands of a person who did not know that it had been paid before such transfer to him, is open to all the equities of a non-negotiable instrument, or such as it would have been subject to in the hands of the original payee. And if it was paid the sale of the property under the deed of trust securing it would be invalid.

2. ——: ——: ELECTION OF REMEDIES. One Chase, as executor of the estate of which plaintiffs are heirs, bought real estate for $5,000 with money belonging to the estate, and also paid off a mortgage incumbering it for $3,700, the note being indorsed to him without recourse. He then before the maturity of the note, for value, transferred it to one of the defendants as collateral security for the payment of a $1,000 debt of his own, the transfer being by a written paper pinned to it. The heirs thereupon had his final settlement set aside, and on a recasting thereof he was charged with $18,837, including the $3,700 debt and $5,000 purchase money, and judgment against his bondsmen for this amount was released on the payment by them of about $9,000. *Held*, that, while the defendants could not as innocent purchasers prevent the sale of the real estate, bought by them at the foreclosure of the deed of trust, yet as plaintiffs elected to have the probate court charge the executor for the value of the note and purchase money of the land, and then released his bondsmen, they thereby abandoned their right to proceed to have the sale set aside.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,*
Judge.

AFFIRMED.

*A. F. Evans* and *Frank F. Brumback* for appellants.

(1)   One who takes a negotiable note payable to order
without indorsement or merely by assignment, takes only the
title of the person who transferred to him and subject to all
equities against the note.   This is so even though the note be
taken before maturity, for value and without notice of such
equities.   Tiedeman on Com. Paper, sec. 247; Randolph on
Com. Paper, secs. 788, 789; Patterson v. Cave, 61 Mo. 439;
Weber v. Orton, 91 Mo. 677; Quigley v. Bank, 80 Mo. 289;
Doll v. Hollenbeck, 19 Neb. 639; Gaylord v. Bank, 74 N.
W. Rep. 415; Pavey v. Stauffler, 12 So. Rep. 512; Central
Trust Co. v. Bank, 101 U. S. 68; Omaha Bank v. Walker, 5
Fed. Rep. 399. (2) Lahme took the Chambers note without in-
dorsement.   The collateral agreement pinned to the note
was certainly not an indorsement and indeed it was not even
an assignment.   Tiedeman on Com. Paper, secs. 264, 256;
Daniel on Neg. Instruments, sec. 690; Peck v. Bligh, 37 Ill.
318; Haskell v. Brown, 65 Ill. 29; Franklin v. Twogood, 18
Ia. 515; s. c., 25 Ia. 520; Osgood v. Artt, 17 Fed. Rep. 575;
De Haas v. Roberts, 59 Fed. Rep. 853; Aniba v. Yeomans,
39 Mich. 171; Gaylord v. Bank, 74 N. W. Rep. 415; Thom-
son Co. v. Capitol Co., 56 Fed. Rep. 849; Belcher v. Smith,
7 Cush. 482.   (3) The Chambers note was paid in Hick's
hands with the money of the Jones estate and was not en-
forcible by Chase, the executor of the Jones will.   Lahme
stood in no better position than Chase because he took the
note without indorsement.   Bunn v. Lindsay, 95 Mo. 250;
Patrick v. Boonville Co., 17 Mo. App. 462; Kellogg v.
Schnaake, 56 Mo. 136; Murphy v. Simpson, 42 Mo. App.
654; Bank v. Wingfield, 68 Mo. App. 335; Appledorn v.

Streeter, 20 Mich. 9.   (4)   There is no estoppel against the appellants by reason of anything they did in relation to the removal of Chase as executor and the proceedings taken by his successor.   Comstock v. Eastwood, 108 Mo. 41; Nansen v. Jacobs, 93 Mo. 331, 346; Blodgett v. Perry, 97 Mo. 264; Clark v. Bettelheim, 144 Mo. 258; State v. Branch, 52 S. W. Rep. 390.

*Powell & Powell* for respondents, Kumpf and Pierce.

The judgment rendered in favor of Seehorn, as such administrator, against Chase and his sureties, Pierce and Foree, on January 20th, 1896, for $18,198.81, and all the findings of the court therein are binding on Seehorn as such administrator, on the estate and on the plaintiffs, heirs and devisees under the will, and is a bar to an action by these plaintiffs.   (a) A judgment against administrator both as to personalty and realty is conclusive on the heirs.   Moody v. Peyton, 135 Mo. 482; Ward v. Brown, 87 Mo. 468.   (b)   A judgment in an action by or against a trustee will be a bar to an action by the beneficiary.   Barton Bros. v. Martin, 60 Mo. App. 351; Wych v. East India Co., 3 P. Wm. Ch. 309; Bryan v. Means, 29 Ala. 423; Williams v. Otey, 8 Humph. 563.

*Wash Adams* and *R. H. Field* for respondents, Lahme and Arnold.

(1) When the transfer of negotiable notes before due for value is accompanied by a written paper (an *allonge*) pinned to the note setting forth a qualified indorsement of the note (as in this case), this is a sufficient indorsement of the note to invest the transferee of the notes with all the rights of a *bona fide* purchaser, the same as if the indorsement had been written on the note itself.   Crosby v. Roub,

16 Wis. 645; Partridge v. Davis, 20 Vt. 488. (2) Lahme was not called upon to take notice of the deed from Chambers to Crawford nor of the deed from Crawford to the plaintiffs, because they were subsequent in date and record, to the deed of trust given to secure the $3,700 note. Coldbrook on Coll. Security, sec. 147; Crockett v. McGuire, 10 Mo. 37; Digman v. Collum, 47 Mo. 374; Lincoln v. Thompson, 75 Mo. 613; Bartlett v. Eddy, 49 Mo. App. 45. (3) Plaintiffs are strangers to the $3,700 note and to its alleged payment, if made; therefore they can have no advantage therefrom. Kelly v. Staed, 136 Mo. 430; Bartlett v. Eddy, 49 Mo. App. 33; Hunleth v. Leahy, 146 Mo. 408. (4) Plaintiffs learned from Chase in September, 1890 (through their attorney, A. F. Evans), that Chase claimed to have paid off the $3,700 note and failing to get the note from him, four or five years after so learning of Chase's claim of payment, elected to cause or suffered the transaction of Chase with Hicks to be treated by the probate court as not a payment by Chase of the $3,700 note for the estate, but as a transaction for his (Chase's) own use, and charged and caused or suffered him to be charged therewith and with interest thereon accordingly. The plaintiffs were thereby estopped to thereafter claim, as against Lahme or even as against Chase, that the transaction of Chase with Hicks in respect of the $3,700 note was a payment for, or on behalf of, the Jones estate, or its beneficiaries, and the court for this reason alone, properly dismissed the plaintiffs' petition in this action, based upon such claim. Barker v. Barker, 14 Wis. 146; Fowler v. Savings Bank, 113 N. Y. 450; Bigelow on Estoppel, p. 642; Herman on Estoppel, pp. 1172, 1173; Nanson v. Jacobs, 93 Mo. 346; Knoop v. Kelsey, 102 Mo. 298. And even if the plaintiffs had not authorized, nor participated by their attorneys in, the recast of the account between Chase and Seehorn, his successor, they were in law represented by

Seehorn and bound by his action in the settlement in the probate court, in accepting from the probate court a withholding from Chase and his sureties a credit for the $5,000 on account of purchase of property and $3,700 note in question, and by his receiving and accepting judgment there charging them (Chase and his sureties) therewith and with interest thereon as for Chase having bought the Hicks note and deed of the property for himself individually. R. S. 1889, sec. 48; Ward v. Brown, 87 Mo. 468; State ex rel. v. Moore, 18 Mo. App. 406; Smarr v. McMasters, 35 Mo. 351; Young v. Byrd, 124 Mo. 591; Reed v. Perry, 1 Monroe (Ky.), 253; Alston v. Cohen, 1 Wood, 487; Lalibut v. Pruitt, 1 Wood, 144; Pomeroy on Rights and Remedies, sec. 261.

A. F. Evans and Frank F. Brumback for appellants in reply.

(1) Even if the theory advanced by respondents of following trust fund should be adopted, then even more conclusively does it appear that the action in the probate court was not an election, because the rule is well established that one may sue for trust funds and at the same time pursue the property into which they have gone. Holly v. Domestic and Soc., 85 Fed. Rep. 249; Wemple v. Hawenstein, 46 N. Y. Sup. 288; R. Pierson's Estate, 46 N. Y. Sup. 557; Goodyear v. Caduc, 144 Mass. 85; Walden Bank v. Birch, 130 N. Y. 221. (2) The judgment obtained by Seehorn could not operate as an election because the appellants did not know the facts as they actually stood. 7 Am. and Eng. Ency. Plead. and Practice, p. 366; Bank of Lodi v. Washburn, 74 N. W. Rep. 363. The modern doctrine of election is that satisfaction constitutes a bar, but no preliminary step can estop. Miller v. Hyde, 37 N. E. Rep. 760; In re Pierson's Estate, 46 N. Y. Sup. 557; Bowdish v. Page, 47 N. E. Rep. 44.

BURGESS, J.—This is a suit in equity by plaintiffs to set aside a trustee's sale of a small tract of land in Kansas City, Missouri, made by defendant O'Neill, sheriff, and trustee under a deed of trust on said land, executed by J. T. Chambers and his wife Othelia on the 19th day of April, 1889, to Samuel Foster, trustee, for the use and benefit of Charles R. Hicks, to secure the payment of a promissory note for the sum of $3,700, dated on the 17th day of April, 1889, due three years after its date and executed by said Chambers and wife to said Hicks.

In 1878 one John Jones died testate in Ohio possessed of real and personal property in Jackson county, this State. He left surviving him as his only heirs at law two children, viz., Mary E. Bishop and Edward J. Jones. By his will which was duly admitted to probate in said county, the testator named Charles W. Chase as his executor, who thereafter qualified as such. By his will the testator directed his executor to sell all of his real estate, and after paying some bequests to invest the balance of the proceeds in unincumbered real estate, the interest and profits arising from which was to be divided equally among his two children during their natural lives. The investments were to be made in Kansas City property.

The executor sold the land as directed by the will, realizing therefrom something over twenty-two thousand dollars. He then began negotiations with Matt. H. Crawford for the purchase of the land in litigation, for which the latter asked five thousand dollars.

It had formerly been owned by said Chambers and wife, from whom Crawford derived title, and while they owned it they had placed upon it the deed of trust under which it was sold at trustee's sale, at which defendant Arnold became the purchaser. In the negotiations between Chase and Crawford for the purchase of the land it was developed that it

was incumbered by said three thousand seven hundred dollar deed of trust, and they went to Hicks to whom the note was executed to see what could be done about it. Hicks had negotiated the note, and did not have it in his possession, but promised to get it back, and thereupon Chase by his individual check paid $3,852.11, the amount of the note and four coupon notes then due, and two per cent commission thereon to Hicks. At the same time Hicks made out in the name of Hicks and Foster (of which firm he was a member) and delivered to Crawford the following receipt.

"$3,852.11. Kansas City, July 22d, 1890.

"Received of M. H. Crawford, Esq., three thousand, eight hundred and fifty-two and 11-100 dollars to pay loan No. 211 made April 17th, 1889, by J. T. Chambers and wife on north 32 1-2 feet of south 65 feet lots, 1, 2, 3 and 4 (except 5 feet off lot 4) block 3, Jas. Goodin place which is to be delivered within ten days.

"Hicks & Foster."

About August first, 1890, the $3,700 note was returned to Hicks, and he then indorsed and delivered it and the coupon notes to Chase, and by the terms of the indorsement, made the notes payable to the order of Chase without re· course upon him, Hicks. Hicks testified that he had no knowledge that Chase was executor of Jones, or that the money paid him belonged to the Jones estate.

On September 16, 1890, Chase borrowed from the defendant Lahme one thousand dollars, and to secure its payment executed to him his note for that amount due one year after that date, and as collateral security thereto delivered to him the note for $3,700 and executed and delivered to him the following instrument of writing.

"Kansas City, Mo., September 16, 1890.

"The attached note (with deed of trust accompanying) for $3,700 dated Kansas City, Mo., April 17th, 1889, due 3 years from date signed by J. T. Chambers and wife is

placed as collateral security with Adolph Lahme for payment of my note of $1,000 due in one year from date.

"C. W. Chase."

At the same time Chase took the $3,700 note of Chambers and wife, a blank letter head of H. C. Kumpf & Son, the above collateral agreement written upon a letter head of H. C. Kumpf & Son, and the one thousand dollar note, and placing them one on top of another in the order as set out above counting from the bottom, attached them all four together by a pin through the upper left hand corner and delivered them to Lahme.

Six years passed by. During this time Chase made two payments of interest to Lahme on the one thousand dollar note, the payments being made in 1892 and 1893.

In March, 1896, Lahme requested respondent O'Neill, who was sheriff of Jackson county, to act under the power in the Chambers' deed of trust and sell the land, the trustee Foster having left the State. The sheriff acting under the power and in regular manner proceeded to advertise and sell the land on March 30, 1896.

While there was room on the $3,700 Hicks note to have written the collateral contract, given to Lahme, there was not sufficient room on the coupon notes to have written the same. The collateral agreement was put on another piece of paper and pinned to the notes because it was more convenient to do it that way.

Lahme testified that he loaned the one thousand dollars to Chase through George Kumpf, who was acting for Chase, and that he took the notes in question without any knowledge of any lack of title in Chase to the $3,700 notes and coupons, or that it was paid, or that there was any claim that it had been paid, and that he took this note on the strength and validity of the same as the property of Chase and as security for such loan.

This evidence of Lahme was undisputed by any witness

in the case, and the undisputed evidence of George Kumpf was that the loan of one thousand dollars was made and the security taken by Lahme before the maturity of the $3,700 Hicks note or the coupons attached thereto, and without any knowledge on his part that the last-named note had been paid, or was claimed by any one to have been paid, and with the thought that the bond was straight as it appeared on its face.

Attorney Evans testified that he, acting for the plaintiffs, learned from Chase of the alleged payment by Chase of the $3,700 note as long ago as September or October, 1890, and then demanded of Chase this note but failed to get it. Between four and five years after the transaction aforesaid between Chase and Lahme, and after attorney Evans, representing the plaintiffs, had first learned of the alleged payment of the $3,700 note out of the funds of the Jones estate, and after he had tried and failed to get this note from Chase, these plaintiffs caused Chase's settlements as executor to be set aside and him to be removed as executor and his account as executor of the Jones estate to be examined, and recast, and through their attorney's efforts a judgment for $18,198.81 to be obtained in the probate court, in favor of Seehorn, the administrator *de bonis non* of the estate, against Chase and his sureties in said estate, including therein as a credit to Chase the purchase price of the property including the $3,700 note involved in this suit.

This judgment of the probate court against Chase and his sureties for $18,198.81 was obtained on January 20, 1896, and included the $5,000 purchase money of the property in question and $1,316.65 interest thereon, and Chase was expressly charged in said judgment with having used said $5,000 for his own private uses, and no credit therefor from said estate was there or elsewhere allowed to Chase.

Next following the charges in the settlement aforesaid in the probate court between Chase, executor, and Seehorn,

administrator *de bonis non* of the estate of John Jones, of January 20, 1896, is the following finding entered then and there by the probate court: "And the court further finds that the executor has made no investment in real estate in compliance with the terms ·of the will for the benefit of the devisees."

Not until after all the foregoing events, nor until on the 30th day of March, 1896, the time the property in question was offered for sale and sold by sheriff O'Neill as trustee, to defendant H. Clay Arnold, for $1,700 (paid by Arnold) does the evidence show that the plaintiffs sought to avail themselves of a claim of title to the $3,700 note, or to the claim made at the trustee's sale and in this suit, that it had been paid for them by Chase. But on that day plaintiffs appeared at the sale by attorney and before the sale began gave a full and elaborate notice of all the circumstances connected with the transaction and of their claim that the sale would be invalid because the $3,700 note had been paid. This action was begun April 3, 1896. Since it was begun execution was on July 14, 1896, duly issued on the judgment aforesaid and the lands of A. J. Pierce, one of Chase's sureties, were on August 10, 1896, sold thereunder by the sheriff to Seehorn as administrator of the said estate, and after this the plaintiffs joined Seehorn in a suit in equity, against alleged fraudulent grantees of said Pierce, to establish the title thereto in Seehorn. Afterwards, to-wit, November 11, 1896, the judgment of the probate court aforesaid was credited with one-half of the amount then due thereon, to-wit, $9,418.50.

The consideration for this credit was $2,400 cash paid and a deed of property from Mrs. Pierce (wife of one of the sureties) to T. J. Seehorn, administrator *de bonis non* of the Jones estate, also a deed of property from Mrs. Pierce to Mr. A. F. Evans (for his fee for services to the Bishops and Seehorn against Chase and his sureties) of estimated value of

eleven or twelve thousand dollars, making in all about four-teen thousand dollars given up by Mrs Pierce for the credit aforesaid and release of her husband's estate from Chase's bond.   The plaintiffs participated in this settlement too by giving quitclaim deeds to Mrs. Pierce of certain of the lands purchased by Seehorn under his judgment aforesaid.

There was no tender made by plaintiffs either in the pleadings or at the trial, to Lahme of the amount of his note nor to Chase of any credit on the judgment of the probate court against him of the amount of the purchase money of lands in question and interest thereon charged to him and included in said judgment.   And Seehorn is neither a plaintiff nor defendant in this case though he is still acting as administrator of the estate.

The court found for defendants establishing the title to the land in Arnold and directed the sheriff as trustee to make him a deed for same, directing payment by sheriff out of the $1,700 paid by Arnold, of first, the sheriff's costs and expenses, and the balance to the receiver who out of the total in his hands was to pay, first, his costs and expenses, second, the amount due Lahme on his one thousand dollar note, third, the amount due Kumpf on his garnishment, and fourth, the balance to respondent Pierce, and rendered judgment against appellants for costs.

Plaintiffs appeal.

It is claimed by plaintiffs that the thirty-seven hundred dollar note made by Chambers to Hicks was paid off and the debt extinguished July 22, 1890, long before the sale of the property in question under the deed of trust thereon which was given to secure its payment.   Chase the executor who had been negotiating with Crawford who owned the equity for the purchase of the property for the plaintiffs, refused to purchase it unless a clear title could be obtained, and to that end he and Crawford called upon Hicks at his office, when Chase for the Jones estate paid the amount of the note and

coupons then due—including interest, whereupon Hicks gave Crawford a receipt which recited that the money was received by Hicks to pay a loan, which manifestly had reference to the note. Crawford testified that Chase said to him, during their negotiations for the purchase by Chase of the property, and also at the time of the delivery of the deed to him, and on the payment of the consideration, that he was purchasing the land for the grantees named in the deed, under the terms of the will of John Jones, deceased, and out of moneys held by him as executor of his will.

There was no testimony which tended to show to the contrary except the giving by Chase of his individual check in payment for the debt, the assignment by Hicks to him individually of it, and that it was a sale of the note and not its payment. But the evidence when considered in the light of surrounding circumstances, the purpose for which Chase was buying the land, that he would not take it unless the incumbrance upon it was removed, that the money paid for the purchase belonged to the Jones estate, shows beyond any and all question, that the money paid by him to Hicks on the debt, was in satisfaction of, and an extinguishment of it. Any other position is utterly inconsistent with his refusal to buy the land from Crawford unless part of the purchase money went to the extinguishment of the Hicks debt, and the satisfaction of the deed of trust given to secure its payment. Moreover, Chase did not answer the petition, and in so far as he is concerned the allegations in it must be taken as confessed. We therefore hold that the debt was paid off before the day of sale by the trustee.

But notwithstanding this fact, as the note was a negotiable note, and indorsed to Chase before due, if it was thereafter and before it became due indorsed for a valuable consideration in the ordinary course of business to the defendant Lahme he was not affected by its payment, and the sale under the deed of trust was valid. Plaintiffs, however, con-

tend that there was no indorsement of the note, that it was merely assigned to Lahme, and that in such circumstance, he took only the title of Chase, and subject to all equities against the note that existed against it in his hands.

It is well settled that a note although negotiable in its character, if transferred without indorsement, is open to all the equities of a non-negotiable instrument, or to such as it would have been subject to in the hands of the original payee. [Patterson v. Cave, 61 Mo. 439, and cases cited; 1 Dan. Neg. Inst. (3 Ed.), secs. 321, 573, 644; Quigley v. Bank, 80 Mo. 289; Weber v. Orten, 91 Mo. 677.]

But defendants insist that when the transfer of a negotiable note before due for value is accompanied by a written paper pinned to the note setting forth a qualified indorsement of it as in this case, this is a sufficient indorsement of the note to invest its transferee with all the rights of a *bona fide* purchaser, the same as if the indorsement had been written upon the note itself.

As a general rule an assignment of a negotiable instrument must be indorsed upon it, that is, written upon its back, but there is an exception to this rule when the back of the instrument is so covered as to make it necessary, then "an extra piece of paper may be tacked or pasted on the instrument, and all further indorsements may be written on the attached paper." [Tiedeman on Commercial Paper, sec. 264; 1 Daniel on Neg. Inst. (4 Ed.), sec. 690.]

In Folger v. Chase, 18 Pick. 63, it was held that an indorsement written on a slip of paper, which was attached to the back of a note by a wafer, for the purpose of writing receipts of partial payments thereon, there not being room on the back of the note, was sufficient, the indorsement having been made after several of such receipts had been written on such attached paper.

And in Crutchfield v. Easton, 13 Ala. 337, it was held that an indorsement of a bill or note is generally made by the

holder writing his name upon the back thereof, but that indorsements, made on a piece of paper, attached to the bill, called an *allonge*, are frequent. [Chitty on Bills (13 Am. Ed.), 257.]

In the case of Fountain v. Bookstaver, 141 Ill. 461, one William Golightly executed and delivered a mortgage on land which he then owned to one James Blackburn to secure the payment of two promissory notes, one for the sum of $500, and the other for $10, each bearing ten per cent interest from date, and due in one year. The smaller note was attached to the other with paste, and on the back of it (the ten dollar note), was pasted a slip of paper, on which was written an assignment of the notes from Blackburn to Louise Golightly, and thereafter an assignment of them by her to Mary E. Bookstaver. It appeared from the notes copied in the bill of exceptions that many indorsements of payments of interest had been made prior to the date of the assignment to Bookstaver, and that fact in the absence of all proof to the contrary was held to be sufficient to warrant the conclusion that the backs of the notes were covered, and that the "*allonge*" or additional piece of paper was necessarily attached in order to make further indorsements on the same.

In passing upon a similar question in Osgood's Admr. v. Artt, 17 Fed. Rep. loc. cit. 577, it was said: "As a general rule the legal title to negotiable paper, payable to order, passes, according to the law-merchant, only by the payee's indorsement on the security itself. The only established exception to this rule is where the indorsement is made on a piece of paper, so attached to the original instrument as, in effect, to become part thereof, or be incorporated into it. This addition is called, in the adjudged cases and elementary treatises, an *allonge*. That device had its origin in cases where the back of the instrument had been covered with indorsements, or writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a

piece of paper, attached in the manner indicated, would now be deemed sufficient to pass the legal title, although there may have been, in fact, room for it on the original instrument."

The case of Crosby v. Roub, 16 Wis. 616, goes further, and, holds that an indorsement or transfer of a promissory note may be on another paper attached to and made a part of the note, and that it is not essential to a transfer of a note by this method that there should have been a physical impossibility of writing the indorsement or transfer on the note itself, but it may be on another paper attached to the note, whenever *necessity* or the *convenience* of the parties requires it.

But the courts of Iowa, Illinois and Nebraska have all refused to follow that case. In Franklin v. Twogood, 18 Iowa, 515, the Racine and Mississippi Railroad Company received a negotiable note payable to itself. Before the maturity of the note the railroad company, executed its bond payable to ———— or bearer for a certain sum and ———— as collateral security for the bond it assigned and transferred the note describing it. The railroad company attached the bond, note and mortgage securing the same, which were attached together by eyelets, and sold them before maturity to an innocent holder, who sued upon the note. The suit was defended upon the ground that the note was without consideration, but plaintiff claimed that the bond being attached to the note, amounted to an indorsement, and that the bond was merely an *allonge*. The court held that the note had not been indorsed, that the bond was not an *allonge* and that the defense was good. This case, Franklin v. Twogood, was before the Supreme Court of Iowa again in 1868, 25 Iowa, 520. It was then urged that the contract was a Wisconsin contract, and having been construed by the highest court of the State in Crosby v. Roub, *supra*, that its ruling should be followed. But the Iowa court refused to do so, and held to its former

ruling. In 1865, a case upon the same series of bonds and notes issued by the Racine and Mississippi Railroad Company came before the Supreme Court of Illinois in Peck v. Bligh, 37 Ill. 317, in which the doctrine announced in Crosby v. Roub, *supra*, was repudiated, the court holding that the attached bond was not an indorsement.

The same rule was announced by that court in the subsequent case of Haskell v. Brown, 65 Ill. 29.

In Doll v. Hollenbeck, 19 Nebraska, 639, the mortgage and note were not attached or fastened together, but there was plenty of room on the back of the note for indorsements. The court observed that "it would be a forced and inadmissible construction to treat the mortgage as an *allonge* of the note," and in express terms refused to follow Crosby v. Roub, *supra*.

In the case at bar there was plenty of room upon the back of the note to have made the indorsement, and the only excuse for not doing so was that it was more *convenient* to assign it on a separate paper, which defendants insist was a sufficient indorsement of the note to invest Lahme with all the rights of a *bona fide* purchaser, the same as if the indorsement had been written on the note itself. But this position is not sustained by a single authority which we have been able to find except the case of Crosby v. Roub, *supra*, and that has been repudiated by the highest courts of the States before mentioned. All of the authorities with the exception of that case are the other way, and we must in accordance therewith hold that the transfer of the note to Lahme was not by indorsement and although before maturity, he took it and the mortgage which was incident thereto subject to all defenses that would have thereafter been available against it by the payor, one of which was its payment. [Whitehead v. Waller, 10 M. & W. 695; Wheeler v. Barret, 20 Mo. 573; Ford v. Phillips, 83 Mo. 523; Kellogg v. Schnaeke, 56 Mo.

136; Weber v. Orten, 91 Mo. 677; Turner v. Hoyle, 95 Mo. 337; Julian v. Calkins, 85 Mo. 202.]

It is however said, that plaintiffs are strangers to the note and to its alleged payment if made, and can not for that reason have any advantage therefrom. While we recognize the rule to be that where a negotiable note is transferred after it becomes due, the assignee takes it subject only to such equities and defenses as are connected with the note itself and not to such as arise out of collateral transactions as held in Kelly v. Staed, 136 Mo. 430, and Hunleth v. Leahy, 146 Mo. 408, it would be stretching that doctrine to an unwarranted extent, and without any authority or reason therefor, to hold that the owner of a tract of land subject to a mortgage which existed thereon prior to the acquisition by him of title thereto could not, when the mortgage is attempted to be foreclosed, show that the debt whose payment it was given to secure had been paid off and satisfied.

At the time Chase placed the note with Lahme as collateral security for the one thousand dollar loan, it had been paid off, and as it was not regularly indorsed to him, he took it subject to that defense although he paid a valuable consideration therefor.

In Kernehan v. Durham, 48 Ohio St. loc. cit. 20, in speaking of this species of property it is said: "This species of property, when purchased overdue from one who is not the real owner, and has no authority to sell, is thus placed in the same class with other goods, and made subject to the well-recognized rule, that if the seller was not the owner, and had no authority from the owner to sell, the buyer will have no title whatever to the property he has bought, as against the true owner, although purchased in the ordinary course of trade. . . . . Buying the paper after it is dishonored, the purchaser, who, when put on his guard, does not seek the knowledge which he might obtain by using reasonable diligence, can not complain , if the law charges him

with constructive notice of such infirmity of title, as attaches to the instrument in the hands of him from whom he acquired it, and permits him only to stand in the shoes of his vendor or indorser. Nor is the indorsee or purchaser after maturity placed in such situation, only as regards equities that may exist between the maker of the note and the payee who indorsed or transferred the instrument. It is held in England, that if there be an equity attaching directly to the bill or note itself, it may be asserted against an indorsee after maturity, by a third party who claims the right to follow the bill. And Mr. Daniels, in his work on Negotiable Instruments, says: "If the equity be a claim of some right to the instrument directly attached to it, we perceive no good reason why it may not be asserted against an indorsee after maturity, by any party whatsoever. Section 726b."

In Fisher v. Leland, 4 Cush. loc. cit. 458, the court uses this language: "But where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation,—why is it not paid? Here is something wrong. Therefore, although it does not give the indorser notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the indorser himself has, and subject to any defense which would be made, if the suit were brought by the indorser. The note does not cease to be negotiable; the indorsee takes a title, and may sue, but he is so far in privity with his indorser that he takes only his title; and if the defendant could make any defense against a suit brought by such indorser, he could make it against the indorsee. This rule is settled in the case of a suit by an indorsee taking the note overdue, by a series of authorities, which show not only that such defense may be made, but that it may be proved by the same evidence, by which it might have been proved if

the indorser were plaintiff, to-wit, the admissions of such indorser, made whilst he was the holder."

In Appledorn v. Streeter, 20 Mich. 9, it is held that the payment after maturity, of a promissory note secured by a mortgage, by a party who had acquired the mortgagor's title to the mortgaged premises, by conveyance expressly made subject to the mortgage, extinguished the note; and if it be afterwards put in circulation no recovery can be had upon it.

From what has been said it necessarily follows that Lahme occupies precisely the same attitude towards the $3,700 note and mortgage that Chase did at the time he placed it with him as collateral security, and as it was paid at that time he acquired nothing by its placement with him.

But is is argued by defendants that plaintiffs elected through their attorney and Seehorn administrator in charge of the estate of their father not to allow Chase a credit of the $5,000 for the purchase of the land and the $3,700 note in question and to have the probate court charge him with $1,316.65, interest thereon in the final settlement between Chase and Seehorn and that this was an abandonment for the estate (including plaintiffs) of any claim of title to the land and note in question, a satisfaction of the purchase and assignment made by Chase of the note in question, and *ipso facto* vested the title to the land and note in Chase, or his assigns irrevocably. It is true that when Chase's final settlement was set aside, the entire administration of the estate was re-opened. And after his removal and his successor Seehorn was appointed it was his, Seehorn's, duty to move the court to compel Chase to make final settlement and on such motion after due notice to him to ascertain the amount of money, the quantity and kind of real and personal property, and all the rights, deeds, evidences of debt and paper of every kind of the testator in the hands of the executor Chase or that came into his hands, and remained unaccounted for at the time of his removal. [Sec. 48, Revised Statutes

1889.]   These requirements were complied with by Seehorn, the probate court, and Chase, but Chase was not allowed in this settlement credit for the $5,000 invested by him as executor in the land.

The probate court had the unquestionable right as between Seehorn and Chase to refuse him credit for this mon y, whether the plaintiffs were present or not.   All of Chase's indebtedness to the estate including this five thousand dollars was included in his final settlement, upon which he was found to be indebted to the estate in the sum of $18,198.81, for which judgment was rendered against him and his sureties upon his bond as executor.

By charging Chase with this money, Seehorn the administrator elected to hold him responsible in his official capacity therefor.   Plaintiffs were represented in this settlement by attorney who had control of the proceeding therein, and they must be held to be bound thereby.

Moreover in confirmation of the settlement made between Seehorn and Chase by the probate court plaintiffs by their representative Seehorn had the lands of A. J. Pierce, one of Chase's sureties, sold under execution in favor of himself as administrator of Jones, bought it in, and subsequently joined Seehorn in compromising the liability of Pierce's estate (he having deceased) upon the judgment against him, in the exchange of deeds for their use and benefit for property purchased by Seehorn under said judgment.

Plaintiffs had the right to claim the benefit of the payment of the $3,700 debt on the land and the extinguishment of that incumbrance by Chase, or to proceed against him and his sureties upon his bond as executor for the money, but could not do both, and the administrator having recovered judgment against the executor and his sureties for this and other moneys of the estate misappropriated by him in the sum of $18,198.81, and realized therefrom for the benefit of

plaintiff the only heirs, the sum of $9,418.50, our conclusion is that they should be estopped by their election to proceed against Chase and his sureties upon his bond, that course being inconsistent with the remedy pursued in this cause.

For these considerations we affirm the judgment. *Gantt, P. J.,* concurs; *Sherwood, J.,* absent.